HENRY PARISH, DANIEL PARISH, LEROY M. WILEY, JOHN R. MARSHALL, THOMAS P. NORRIS, AND THOMAS PARISH, MERCHANTS AND PARTNERS TRADING UNDER THE FIRM AND STYLE OF PARISH & CO., APPELLANTS, *v.* CALEB MURPHREE, ADMINISTRATOR OF GEORGE GOFFE, DECEASED; LOUISA C. GOFFE, THOMAS WILLIAMS, JR., JOHN H. HENDERSON, TRUSTEE, &C., MARTHA LUCY, ADDISON BOYKIN AND WIFE, ELIZABETH G. GOFFE, CALVIN NORRIS, AND DAVID STRODER.

The Statute of Frauds in the State of Alabama declares void conveyances made for the purpose of hindering or defrauding creditors of their just debts.

Where a person made a settlement upon his wife and children, owing at that time a large sum of money, for which he was soon afterwards sued, and became insolvent, these circumstances, with other similar ones, are sufficient to set aside the deed as being fraudulent within the statute.

THIS was an appeal from the District Court of the United States for the Northern District of Alabama.

It was a bill filed by the appellants, as creditors, to set aside a deed of settlement made by George Goffe upon his wife and daughters, under circumstances which are detailed in the opinion of the court.

The District Court sustained the deed upon the following ground.

"The true practical rule which I think is fully authorized by the case of Hinds's Lessee *v.* Longworth, is laid down by the Supreme Court of New York, in the case of Jackson *v.* Town. That rule is, that 'neither a creditor nor a purchaser can impeach a conveyance *bonâ fide* made, founded on natural love and affection, free from the imputation of fraud, and when the grantor had, independent of the property granted, an ample fund to satisfy his creditors.'

"Testing the case under consideration by this rule, we must look to the evidence to ascertain the amount and value of the property owned by George Goffe, as well as by the firm of G. & J. M. Goffe, at the period of the sale to Williams, and the conveyance of his notes for the benefit of Mrs. Goffe and her daughters, independent of the Blount Springs tract; and also to determine whether these deeds are made *bonâ fide*, and free from the imputation of fraud."

The District Court considered that the facts of the case brought it within the operation of this rule, and therefore upheld the deed.

The complainants appealed to this court.

It was argued by *Mr. Volney E. Howard*, for the appellants, for whom also a printed brief was filed by *Mr. J. A. Campbell*, and submitted by *Mr. Wilcox*, for the defendants, on a printed brief.

The following sketch will present the views of the respective counsel upon the questions of fact and of law.

The counsel for the appellants stated that the defendants rely upon the following facts: 1st. That Goffe was fully able to pay his debts with the property that remained to him, and that his insolvency, which was declared and notorious in the early part of 1839, arose from the improvident dealings of 1837 and 1838, as a country merchant. 2d. That Goffe had been advanced by the father of his wife, and this settlement was a return for his

kindness. 3d. That Mrs. Goffe relinquished dower in the lands, and that her relinquishment was the consideration of the settlement.

Much evidence was taken on the first issue, none on the second, and Williams was examined as to the third, and proved that after the arrangements for a sale had been concluded by Goffe to him of the Blount Springs, Goffe proposed the settlement of four notes on his children, amounting to $40,000. That he (Williams) insisted upon the settlement embracing the wife of Goffe, and threatened to interrupt the contract if his wishes were not fulfilled. That Goffe settled the last note due (due in 1848) for $14,000 upon his wife, making the whole settlement $54,000. Record, 158, 159, 160.

Much evidence was taken upon the first part of the case. The result of it was that Goffe in 1836 and 1837 carried on the business of selling merchandise. That he failed to meet his payments in the fall of 1837, in New York, and in the early part of 1838, a very large amount of his paper lay over, including the large debt of the plaintiffs. That suits were instantly commenced against him by a large number of creditors; and early in 1839, he was sold out. That in that year he "run off" with about $10,000 worth of property, to Texas, and died in a year or two after.

The fact is shown that Goffe was largely indebted, and had sent to the north for a larger credit at the date of his contract with Williams, and had obtained it. That he did not disclose this transaction.

In the record, a statement of twenty-seven judgments will be found. Of these, four were rendered on notes dated in February, 1837, and four in the months of September and October, 1837, independent of the judgments recovered by the plaintiff.

The record also shows that Goffe sought and obtained credit in New York without any disclosure of the disposition of the notes of Williams, and the deed of trust on the Springs, to his wife and children.

The principal seat of the business of Goffe was at Tuscaloosa, then the capital of Alabama, and the Blount Springs are situate in a secluded spot in a poor and mountainous country, having but little intercourse with commercial cities.

The judge of the District Court assumed that the fact that Goffe was able to pay his debts in September, 1837, was proven, and upheld the settlement.

The record shows that he (Goffe) sought and obtained credit for these plaintiffs at that time.

The evidence simply indicates insolvency at the date of the sale apart from the property of the Blount Springs.

Covington, his clerk, exaggerates the value of his property. The Tuscaloosa store was sold for $1,000, and is put down at $10,000.

The wild lands in Blount and Walker counties were unsalable at the government price.

In Alabama, the statute of 13 and 27 Elizabeth, have been substantially reënacted.    Clay's Dig. tit. Frauds.    The construction of that statute by the Supreme Court is, that all voluntary conveyances as to existing creditors are in law fraudulent, and that the creditor is not required to prove circumstances of fraud.    2 Stewart's Rep. 336; 9 Ala. 937, 945; 16 Ala. 233; 3 Porter's Rep. 196; 6 Ala. R. 506; 10 Ala. 432; 14 Ala. 350.

The Supreme Court of the United States, in Sexton *v.* Wheaton, 8 Wheat. 229, notice this construction of the act. In construing this statute, the courts have considered every conveyance not made on consideration deemed valuable in law, as void against previous creditors.    1 Iredell, Eq. 180; 4 Wash. C. C. R. 129, 137; 4 S. & M. 303; 1 Brock. 501, 511; 3 Johns. Ch. R. 481; 12 Pet. 179, 198; 1 Robinson, Va. R. 125; 8 Metcalf, 411; 7 How. S. C. R. 220.

The utmost relaxation of this rule is, that when the gift is reasonable in amount, where an ample estate is left to the debtor for the payment of existing creditors without hazard to their rights, or any material diminution of their prospects of payment, his settlement will not be held invalid.

Under this relaxed rule, the case of the defendants cannot be maintained.

The debts due by the donor were large, covering quite the whole of the property that remained to him, upon a favorable calculation.    The settlement was enormous, and greatly impaired the prospects of payment of the creditors.

Insolvency for such an amount is proven, that the indebtedness of Goffe, in 1837, cannot have been fully ascertained in this case.    1 American Leading Cases, by Hare & Wallace, 60.

The evidence of Williams to show a different consideration for the settlement than the one apparent on the deed of trust, has not succeeded.    Goffe had already concluded to settle $40,000, when Williams first conversed with Goffe, on the children.    At the suggestion of Williams, he adds the last note due ten years after, to the settlement, in favor of the wife.    The fraudulent motive was already in operation when Williams spoke, and we nowhere understood that the wife demanded the settlement, or that it was a consideration for the transfer itself. It seems rather to have been done to pacify Williams.

The deed of trust expresses no consideration of the kind now set up.    It is a purely voluntary settlement on the face of the

deed. It is not competent to the defendants to change its character. 4 Phil. Ev. (Hill & Cowen's notes,) note 287, p. 583; 16 Ohio, R. 438; 7 Johns. R. 341; 11 Wheat. 213.

*Mr. Wilcox,* for the appellees, made the following points:—

But two questions are presented by the record; one of fact, and one of law.

1. Was George Goffe indebted to insolvency, apart from the Blount Spring property, at the time he made the settlement on his wife and daughters? The deposition of Elam Covington, who was well acquainted with Goffe's affairs, settles this question. He states that Goffe owned at the time of the settlement, independent of the Blount Spring property, real estate to the amount of $12,000— negroes worth $13,000. There were debts due him from other persons to the amount of $10,000; making in all $35,000 of his individual means. The assets of the firm of G. & J. M. Goffe, at the same time, consisted of $10,000 worth of merchandise, and $10,000 in debts due them. In addition to this, Goffe still held the two first notes given by Williams, amounting to $10,000; making an aggregate of $65,000 worth of property (partnership and individual,) liable to the individual and firm debts. The debts of Goffe (both individual and partnership) according to the testimony of the complainants' own witnesses, only amounted to about $25,000. The first question, then, is fully answered; for there is no conflict of testimony. The allegation of the bill, that the settlement was made to hinder and delay creditors, is fully denied by the answers, and a good reason shown for its being made, to wit, that Goffe, when a poor young man, had married his wife, and obtained by her a considerable amount of property, a portion of which he wished, while in prosperous circumstances, to settle on his children. Mrs. Goffe also had relinquished her right of dower to the Blount Spring tract of land; and, in consideration of this, the settlement was made on her. Goffe at first refused to make it, and only consented, finally, at the urgent solicitation of his friends. This conclusively shows that he was actuated by no fraudulent design. See deposition of Colonel Williams. It is also shown that Goffe paid his debts until the fall of 1839, two years after the settlement was made.

2. Will an indebtedness not amounting to insolvency, existing at the time of a voluntary settlement, invalidate it? or, is such indebtedness *per se* evidence of fraud?

Whatever may have been the conflict of authorities (English and American) on this point, it can no longer be considered open, since the decision by this court, in the case of Hinds's Lessee *v.* Longworth, 11 Wheat. 199. The doctrine of *per se*

Parish et al. *v.* Murphree et al.

fraud is here expressly repudiated, and each case made to depend on the circumstances attendant on it. Indeed, common sense will dictate that a man who makes a settlement of this sort under ordinary circumstances, and at the same time retains a sufficiency of property to pay all the debts that may be existing against him, cannot intend a fraud. A fraud, or a desire to avoid the payment of his debts, would lead him to cover up, or secrete all. See also Van Wyck *v.* Seward, 6 Paige, 62; 1 Edwards, 497; 2 Bland, 26; 3 Dessaus. 1.

The decree of the court below dismissing the bill of complaint was therefore correct, and an affirmance is respectfully asked.

Mr. Justice McLEAN delivered the opinion of the court.

This is an appeal in chancery, from the District Court of Northern Alabama.

The bill was filed to set aside a deed of settlement, made by George Goffe, dated the 12th September, 1837, on his wife and four daughters, on the ground, that it was made in fraud of creditors.

At the date above stated, Goffe and wife, by deed of general warranty, conveyed to Thomas Williams, Jr., six hundred and forty acres of land, including the "Blount Spring Tract," in Blount County, State of Alabama, for the consideration of sixty-four thousand dollars.

To secure the payment of the consideration, on the same day, Williams executed a deed of trust on the same property to Joseph M. Goffe and George Goffe, for which notes bearing interest were given, five thousand dollars payable 1st March, 1838; five thousand payable on the 1st of October following, ten thousand the 1st of October, 1840, ten thousand the 1st of October, 1842, ten thousand the 1st of October, 1844, ten thousand the 1st of October, 1846, and fourteen thousand the 1st of October, 1848. Williams was to remain in possession of the land, and was authorized to sell parts of it to meet the above payments.

On the same day, George Goffe executed a deed of settlement signed also by Joseph M. Goffe, by which he appropriated to his four daughters, the four ten thousand dollars notes above stated, and the fourteen thousand dollars note to his wife in consideration of "the natural love and affection he had for them."

The complainants represent that George and J. M. Goffe did business together as merchants, and that on the 2d of February, 1837, they executed to them, their promissory note for $5,169 payable in thirteen months; and on the same day another note payable in twelve months for five thousand one hundred and

sixty-eight dollars and twenty-five cents; also another note on the 22d September, 1837, for $953.25, payable nine months after date. On all which notes judgments were obtained in the District Court, amounting to the sum of $14,667.42, at November term, 1841. Executions having been issued on the judgments, were returned no property, and the defendants are alleged to be insolvent. And the complainants pray that George Goffe may be decreed to pay the amount due them, and on failure to do so, that Williams may be decreed to pay the same, and in default thereof, that the lands and real estate or debts assigned to Mrs. Goffe and her children, may be converted into money by sale or otherwise so as to pay the sum due the complainants.

The defendants deny the allegations of the bill, and aver that at the time of the settlement the Goffes were able to pay their debts; that their assets exceeded their liabilities, and that the complainants have failed to collect their claims through their own negligence.

The statute of frauds of Alabama declares that "every gift, grant, or conveyance of lands, &c., or of goods or chattels, &c., by writing or otherwise, had, made, or contrived, of malice, fraud, covin, collusion, or guile, to the end or purpose to delay, hinder, or defraud creditors of their just and lawful actions, suits, debts, &c., shall be from henceforth deemed and taken only as against the person or persons, his, her, or their heirs, &c., whose debts, suits, &c., by such means, shall or might be, in anywise disturbed, hindered, delayed, or defrauded, to be clearly and utterly void," &c.

This statute appears to have been copied from the English statute of the 13th Elizabeth, and most of the statutes of the States, on the same subject, embrace substantially the same provisions. The various constructions which have been given to the statutes of frauds by the courts of England and of this country, would seem to have been influenced, to some extent, from an attempt to give a literal application of the words of the statute instead of its intent. No provision can be drawn so as to define minutely the circumstances under which fraud may be committed. If an individual being in debt, shall make a voluntary conveyance of his entire property, it would be a clear case of fraud; but this rule would not apply if such a conveyance be made by a person free from all embarrassments and without reference to future responsibilities. But between these extremes numberless cases arise, under facts and circumstances which must be minutely examined, to ascertain their true character. To hold that a settlement of a small amount, by an individual in independent circumstances, and which if known to the public, would not affect his credit, is fraudulent, would be a perver-

sion of the statute. It did not intend thus to disturb the ordinary and safe transactions in society, made in good faith, and which, at the time, subjected creditors to no hazard. The statute designed to prohibit frauds, by protecting the rights of creditors. If the facts and circumstances show clearly a fraudulent intent, the conveyance is void against all creditors, past or future. Where a voluntary conveyance is made by an individual free from debt, with a purpose of committing a fraud on future creditors, it is void under the statute. And if a settlement be made, without any fraudulent intent, yet if the amount thus conveyed impaired the means of the grantor so as to hinder or delay his creditors, it is as to them void.

In the case before us, two of the debts, exceeding ten thousand dollars, were contracted in February, 1837, seven months before the settlement deed was executed. The other debt of nine hundred fifty three dollars and twenty five cents, was contracted the 22d of September, ten days after the settlement. The property conveyed amounted to sixty-four thousand dollars, fifty-four thousand of which were covered by the settlement.

This conveyance is attempted to be sustained on the ground that Mrs. Goffe relinquished her dower to the tract conveyed, and that George Goffe, including the partnership concerns, held an aggregate property, after the settlement, amounting to the sum of sixty-five thousand dollars; and that the debts against Goffe individually and also against the partnership, did not exceed twenty-five thousand dollars. It appears that in the Fall of 1837, and in the early part of 1838, a large amount of his paper being due, at New York, including the plaintiffs' was not paid. Suits were commenced against him, and early in 1839, his property, within the reach of process, was all sold. Goffe, it is proved, sent to Texas in 1839, by his brother, ten negroes and other property, worth about ten thousand dollars. In 1840, George Goffe went to Texas, where he afterwards died. Twenty-seven judgments were rendered against him, four of which were on notes dated the 27th of February, 1837, and four on notes given in September and October following, independent of the plaintiffs' judgments.

These facts are incompatible with the assumption, that Goffe's assets were more than double his liabilities. His aggregate of property must have been made of exaggerated values, and too low an estimate was made of his eastern debts. After the settlement and, as it would seem, before it was known to his eastern creditors, his purchases of merchandise were large, and his business at home was greatly extended. Several stores were established by him in partnership with his brother. After having abstracted from his means fifty-four thousand dollars, this

enlargement of his business shows a disposition to carry on a hazardous enterprise, at the risk of his creditors. In less than three years after the settlement, judgments were obtained against the partnership for between twenty-five and thirty thousand dollars; no inconsiderable part of which had been contracted and was due at the time of the settlement. These facts prove, that after the voluntary conveyance Goffe was unable to meet his engagements. Nothing can be more deceptive, than to show a state of solvency by an exhibit on paper of unsalable property, when the debts are payable in cash. Such property when sold will not, generally, bring one fifth of its estimated value. And such seems to have been the result in the case before us.

But to avoid the settlement, insolvency need not be shown nor presumed. It is enough to know that when the settlement was made, Goffe was engaged in merchandising principally on credit; his means consisted chiefly of a broken assortment of goods, debts due for merchandise scattered over the country in small amounts, wild lands of little value, a few negroes, and a very limited amount of improved real estate, the value of which was greatly over-estimated. On such a basis, no prudent man with an honest purpose and a due regard to the rights of his creditors, could have made the settlement.

A conveyance under such circumstances, we think, would be void against creditors, at common law; and we are not aware that any sound construction of the statute has been given which would not avoid it. Sexton *v.* Wheaton et ux. 8 Wheat. 229; Hinde's Lessee *v.* Longworth, 11 Wheat. 199; Hutchinson et al. *v.* Kelley, Robinson's Rep. 123; Miller *v.* Thompson, 3 Porter's Rep. 196.

The decree of the District Court is reversed, and the cause is remanded to that court, with instructions to enter a decree for the complainants as prayed for in the bill.

### *Order.*

This cause came on to be heard on the transcript of the record from the District Court of the United States for the Northern District of Alabama, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged and decreed by this court, that the decree of the said District Court, in this cause be, and the same is hereby reversed with costs, and that this cause be, and the same is hereby remanded to the said District Court, with instructions to enter a decree for the complainants, as prayed for in the bill.