RED RIVER NATIONAL BANK ET AL. V. KATE DeBERRY ET AL.

Decided June 22, 1907.

**1.—Peremptory Charge—When Permissible.**

It is only when fair minded men can rightfully reach but one conclusion from the evidence that the court may properly instruct a verdict. Evidence considered, and held not to warrant a peremptory charge.

**2.—Insolvent Debtor—Life Insurance.**

A debtor's wife and children have an insurable interest in the life of the husband and father, and under the statute of 13 Elizabeth, they are entitled as against the creditors to the proceeds of a life insurance policy upon the life of the husband and father in their favor even though the insured was insolvent and paid the premiums out of his own property.

**3.—Fraudulent Conveyance—Subsequent Creditor.**

A subsequent creditor may maintain an action to set aside a conveyance as fraudulent when there have been, at all times, creditors who could have maintained such an action, and the indebtedness has been continuous, having been merely shifted from one creditor to another or changed in form.

**4.—Insolvent Debtor—Life Insurance—Statute Construed.**

Under section 4623, Mansf. Dig. (Arkansas), which limits to $300 the amount which an insolvent debtor might expend in life insurance for the benefit of his wife and children, creditors of the insured would have an interest in the insurance money if the amount expended for premiums exceeded $300 and the insured was financially embarrassed at the time the premiums or any of them were paid, such interest would be only in the excess over the insurance which $300 would buy, and in the proportion which the premiums paid by the insured while insolvent bore to the premiums paid by him while solvent.

**5.—Solvency—Burden of Proof.**

In a contest over insurance money between the beneficiaries in the policy and creditors of the insured, the burden of proof is on the beneficiaries to show a financial condition which would warrant the insured in making the gift.

**6.—Insurance Company—Attorney's Fee.**

Where in a contest over insurance money between the beneficiaries in the policy and creditors, the insurance company is made a party defendant, but makes no contest, the company should be allowed its reasonable attorney's fees, to be deducted from the fund, or charged against the unsuccessful plaintiff, as the case might be.

Appeal from the District Court of Red River County. Tried below before the Hon. J. G. McGrady, special judge.

*E. S. Chambers* and *A. L. Beaty,* for appellants.—Of the laws put

in force in the Indian Territory by Act of Congress, including certain chapters and sections of Mansfield's Digest of the statutes of Arkansas and the construction previously given such statutes by the courts of Arkansas, this court will take judicial notice. Apollos v. Staniforth, 22 S. W. Rep., 1060; Overton v. McCabe, 79 S. W. Rep., 861; St. Louis, S. F. Ry. v. Arnett, 84 S. W. Rep., 659.

The rule in the Indian Territory is that as against existing creditors a voluntary conveyance is void, no matter how pure the motive, while as against subsequent creditors it is valid unless there is actual fraud, but a sufficient inference of actual fraud may arise from the fact of indebtedness taken in connection with the conveyance itself. May v. State Nat. Bank (Ark.), 28 S. W. Rep., 431; Rudy v. Austin (Ark.), 19 S. W. Rep., 111; Bertrand v. Elder, 23 Ark. 494; Kehr v. Smith, 20 Wall., 31; Rump on Fraud. Conv., 271; 14 Am. & Eng. Enc. Law, 300.

The rule hereinbefore stated, making the arrangement subject to impeachment by creditors, is applicable when money is expended by an insolvent or embarrassed debtor for life insurance payable to his wife. Bliss on Life Insurance, 353; 14 Am. & Eng. Ency. Law, 264-5; 25 American Law Review, 185; Fearn v. Ward (Ala.), 2 So. Rep., 114; Lehman v. Gunn (Ala.), 27 So. Rep., 475; Bullis v. Robison, 39 Am. Rep., 497; Stokes v. Coffey, 71 Ky., 533; Stigler v. Stigler, 77 Va., 163.

It appears that from the 9th day of January, 1901, to the time of his death the deceased was continuously indebted in a very large sum of money which rendered him insolvent, or would have made his estate insolvent in case of death, and that this indebtedness was simply shifted from one creditor to another or from one form of debt to another, finally resulting in the insolvency of his estate. Under such circumstances those who last held the burden are entitled to impeach voluntary settlements made in the interval without further proof of fraud. They have all the rights of prior creditors. Bump on Fraud. Conv., 322-324; Wait on Fraud. Conv., 103; Paulk v. Cooke, 39 Conn., 566; Mills v. Morris, Hoffman Ch., 419; Madden v. Day, 1 Bailey, 337; Antrim v. Kelly, Fed. Cas., 494, vol. 1, 1062; Spaulding v. McGovern, Fed. Case, 13, 218, vol. 22, 892; Spuck v. Logan (Md.), 54 Atl. Rep., 989; Caston v. Cunningham, 3 Strob., 59; Brown v. McDonald, 1 Hill's Ch., 297; Churchill v. Wells, 7 Cold., 364; Barhydt v. Perry (Iowa), 10 N. W. Rep., 820; Savage v. Murphy, 8 Bosw., 75; McElwee v. Sutton, 2 Bailey, 128.

That policies are not contracts from year to year, but each premium part of consideration for entire term. 19 Am. & Eng. Enc. Law, 45, 46; New York Life Ins. Co. v. Statham, 93 U. S., 24; Fearn v. Ward (Ala.), 2 So. Rep., 119; Pullis v. Robison (Mo.), 39 Am. Rep., 497; see also Rose's notes to Statham case.

*Arnate & Arnate* and *Lenox & Lenox,* for appellees, Kate and L. S. DeBerry.—Under the laws of the Indian Territory a solvent debtor has the right, as against existing creditors, to make a reasonable provision in property for his wife, according to his state and con-

dition, so long as he retains in his possession property amply sufficient to pay all his debts. If he does so fairly and honestly, the wife for whom the provision was made is not bound to surrender the settlement in favor of creditors, in the event the husband should subsequently fail, or become unable to pay the debts he owed when the provision was made. Mansfield Digest, secs. 566, 3374; Bertrand v. Elder, 23 Ark., 494; Rudy v. Austin, 19 S. W. Rep. (Ark.), 113; May v. State Nat. Bank, 28 S. W. Rep. (Ark.), 433; Fchlig v. Busch, 65 S. W. Rep. (Mo.), 548; Vandeventer v. Goss, 91 S. W. Rep. (Mo.), 959; Hoffman v. Nolte, 29 S. W. Rep. (Mo.), 1009; Snyder v. Free, 21 S. W. Rep. (Mo.), 849; Hinde's Lessee v. Longworth, 11 Wheat., 199; Kehr v. Smith, 20 Wall., 31; Lloyd v. Fulton, 91 U. S., 485; Parish v. Murphree, 13 How., 92; Central Bank of Washington v. Hume, 128 U. S., 195.

The debt to appellant bank having accrued subsequent to the procurement of the $20,000 policy and payment of premiums thereon and with notice that such insurance was being carried, it can not now attack the settlement as a fraud upon its rights, since there was no evidence that it was deceived by Love as to the remainder of his assets or induced to give him credit upon a well grounded faith that it was being carried for the benefit of his estate. Lewis v. Simon, 72 Texas, 470; Lehmberg v. Bierstein, 51 Texas, 457; DeGarca v. Galvan, 55 Texas, 53; Monday v. Vance, 51 S. W. Rep., 348.

*Locke & Locke,* for Insurance Company.—The proper practice is to allow the stakeholder his costs and counsel fees against both claimants, with a charge upon the fund in his hands for their security, and to allow to the successful claimant a recovery over against the unsuccessful claimant of the amount by which the fund belonging to him has been depleted by the allowance to the stakeholder. Maclennan on Interpleader, 288; Hendry v. Key, 1 Dickens, 291; Aldridge v. Thompson, 2 Brown's Ch. Cas., 149; Hodges v. Smith, 1 Cox, 357; Aldridge v. Mesner, 6 Vesey, 418; Cowtan v. Williams, 9 Vesey, 107; Richards v. Salter, 6 Johnson's Ch., 445; Canfield v. Morgan, Hopkins' Ch., 224; Lord v. New York Life Ins. Co., 65 S. W. Rep., 699; Hatch v. Hatch, 80 S. W. Rep., 411; Sup. Council L. of H. v. Palmer (Mo. App.), 80 S. W. Rep., 699; Sov. Camp W. O. W. v. Wood (Mo. App.), 89 S. W., 891.

GILBERT, SPECIAL ASSOCIATE JUSTICE.—The Red River National Bank and J. B. Donoho brought this suit against Kate DeBerry and her husband, L. S. DeBerry, and the Mutual Life Insurance Company of New York, on certain notes executed by R. M. Love, the former husband of Kate DeBerry, and sought to subject to the payment of their claims the proceeds of a policy in the sum of $20,000, issued by the insurance company, January 9, 1901, on the life of said R. M. Love, in favor of his wife, Kate Love, to whom said policy was payable in equal annual installments of $1,000 each, and for judgment against Kate DeBerry for insurance collected by her upon other policies to the extent of their debts, and in the alternative, for the amount of premiums paid after 1900, with interest.

Appellants allege that all of said policies were issued to deceased, R. M. Love, while he was a citizen of the Indian Territory, in which there was no statute making the same valid as against existing creditors. Appellants also allege that from September 1, 1900, until he died, Love was insolvent, or at least so financially involved that the payment of the premiums upon the policies taken by him on his life, so impaired his ability to pay his debts as to evidence an intention to place his property beyond the reach of existing and subsequent creditors, and that such payments were calculated to hinder and delay the collection of debts against him; and that after said date he was continuously indebted to appellant bank. That said Love also collected rents on lands allotted by the United States Government to his children since 1899, and certain monies from the same source in 1903, for which rents and monies he is still indebted to said children.

The DeBerrys answered that Kate DeBerry owned land in her own right in the Indian Territory, from which her deceased husband had collected rents during each of the years in question sufficient to pay all the premiums on policies payable to herself upon the life of deceased, and that deceased had never accounted to her for said rents save in that way, but asserted no agreement that she should be recompensed in that way. She also plead the statute of Arkansas, permitting the expenditure by the husband of $300 annually in premiums for insurance in favor of his wife, and denied his insolvency. She also plead that the note in suit had been fully paid by deposits made by deceased, under the rules of law pertaining to application of payments, and that if the estate of decedent was now indebted to the bank it was by overdraft, and for an indebtedness that had arisen since the payment of the said premiums.

The insurance company answered, admitting the issuance of the policy, acceptance of proof of death as sufficient, that it had issued its contract, payable as per the terms of the policy, which it says is not assignable, asks the protection of the court against double payment, and for an allowance of an attorney's fee for answering.

Upon the trial the court instructed a verdict for the defendants, and awarded the insurance company an attorney's fee of $200 for the preparation of its answer, and both acts are assigned as errors.

The rule authorizing the court to direct a verdict is stated in different phraseology by the various courts, but they all mean substantially that when fair-minded men could rightfully reach but one conclusion from the evidence the instruction is permissible, but "when there is an issue raised by the evidence upon which such men could reasonably differ, it is the province of the jury to pass upon it, and the court can not take the right from them." Terry v. Cutler, 23 S. W. Rep., 540. Without intimating what our conclusion might be, had we to pass upon the facts, we think the questions of fact presented in this record should have been submitted to the jury. But little evidence was offered as to the value and amount of uncollected notes and accounts due to the estate, and the values of a portion of its undisposed of interests in realty were left in doubt. The record is silent as to when the $12,000 or $13,000 of approved claims against

the estate, in addition to those of appellant's, were created by Love, whether before or after the taking of the annuity policy, and it does not appear what the considerations for said claims were. The evidence discloses that Love's books did not show from whom, or in what amounts, he borrowed money. Did he owe these additional debts when he paid the premiums on the policies involved? If so, did their existence, together with his other indebtedness, render him insolvent, or in a condition of financial embarrassment? Did the bank know of their existence?

Appellants contend that under either of two statutes of Arkansas, put in force in the Indian Territory by Act of Congress, they are entitled to recover. The statutes are as follows: "Section 3374—Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods and chattels, or things in action, or of any rents issuing therefrom, and every charge upon lands, goods or things in action, or upon the rents and profits thereof, and every bond, suit, judgment, decree or execution, made or contrived with the intent to hinder, delay or defraud creditors or other persons of their lawful actions, damages, forfeitures, debts or demands, as against creditors and purchasers prior and subsequent, shall be void."

"Section 4623—It shall be lawful for any married woman, by herself and in her name, or in the name of any third person, with his assent as her trustee to cause to be insured, for her sole use, the life of her husband for any definite period, or for the term of his natural life; and in case of her surviving her husband, the sum or net amount of the insurance becoming due and payable by the terms of the insurance shall be payable to her and for her use; and in case of the death of the wife before the decease of her husband, the amount of said insurance may be made payable to his or to her children, for their use, and to their guardian for them, if they shall be under age, as shall be provided in the policy of insurance; and such sum or amount of insurance so payable shall be free from the claims of the representatives of the husband, or of any of his creditors; but such exemption shall not apply where the amount of premium annually paid out of the funds or property of the husband shall exceed the sum of three hundred dollars." Appellees do not controvert appellants' proposition, that said statutes of Arkansas, so extended over the Indian Territory, are applicable in this case. This court will take judicial notice of such enactments. Apollos v. Staniforth, 3 Texas Civ. App., 506. Appellees have expressly pleaded section 4623, above quoted, and thus made such statute available for appellants. Parlin & Orendorff v. Hanson, 21 Texas Civ. App., 402; Gaston v. Wright, 83 Texas, 282.

As to whether or not an insolvent, under the statute of 13 Elizabeth, adopted by most of the States, can invest large sums, by way of premiums in policies of insurance, made payable to his wife or children, and thus place the same beyond the reach of creditors, the decisions of the courts are divided; but the decisions of the Supreme Court of the United States are controlling in the Indian Territory, and the case of Central Bank of Washington v. Hume, 128 U. S., 195, L. ed., book 32, 371, but for said section 4623, would, in our

opinion, be conclusive against the contention of appellants. In that case Hume, while insolvent, procured policies of insurance upon his own life for the benefit of his wife and children, upon which he paid the premiums himself. His creditors (he having died insolvent) sought to reach the proceeds of the policies, and in the alternative, the premiums paid thereon, and contended that the policies were within the provisions of 13 Elizabeth, "and inured to the benefit of his creditors, as equivalent to transfers of property with intent to hinder, delay and defraud."

The court, while admitting that if the policies had issued for the benefit of Hume's estate, and had then been transferred, the transfer could have been attacked by the creditors in the same way that any other transfer of his property by an insolvent could be assailed, then adds: "But the rule applies only to that which the debtor could have made available for payment of debts. . . . A person has an insurable interest in his own life for the benefit of his estate. . . . The creditor has an insurable interest in the debtor's life, and can protect himself accordingly if he so chooses. . . . The wife and children have an insurable interest in, the life of the husband and father, and if insurance thereon be taken out by him, and he pays the premiums and survives them, it might be reasonably claimed, in the absence of a statutory provision to the contrary, that the policy would inure to his estate." But during the life of said dependent beneficiaries the insured can exercise no power of disposition over the policy without their consent, and has no interest therein. "Nor upon his death have his personal representatives or creditors any interest in the proceeds of such contracts which belong to the beneficiaries to whom they are payable." The court, in discussing the contracts involved in that case, held that Mrs. Hume and the children were parties to such contracts, and that before creditors could have avoided such contracts as were then made it was incumbent upon them to show that there was fraud, and that Mrs. Hume and the children, and the insurance company issuing said policies, participated in such fraud, which was not attempted therein, and which is not suggested in this case.

It will be observed that the policies herein involved are made payable to the wife and children of Love, as those in the Hume case were made payable to his wife and children, and the court announces that the distinction between the transfer of a policy taken out by a person upon his insurable interest in his own life, and payable to himself, or his legal representatives, and the obtaining of a policy by a person upon the insurable interest of his wife and children, and payable to them, is obvious. After quoting from some State decisions the court says: "Conceding then that Hume paid the premiums out of his own money when insolvent, yet as Mrs. Hume and the children survived him, and the contracts covered their insurable interest, it is difficult to see upon what ground the creditors can take away from these dependent ones that which was expressly secured to them in the event of the death of their natural supporter. . . . In no sense was there any gift or transfer of the debtor's property, unless the amounts paid as premiums are held to constitute such

gift or transfer." The court then holds that even if the payment of premiums were within the statute of Elizabeth, the creditors would have no interest in the proceeds of the policies so made payable to the wife and children, and reaches a like conclusion concerning the premiums paid on said policies.

Therefore, it is by reason of section 4623, Mansf. Dig., above quoted, if at all, that appellants can recover. That statute was enacted in 1873, and has since been the law of Arkansas. It was extended over the Indian Territory by Act of Congress in 1890, two years after the case of Bank v. Hume was decided, and its proper construction becomes material in this case. Statutes almost identical in language had been in force in other States for many years before its adoption in Arkansas, and had received the construction of the Appellate Courts of the States where enacted. It is fair to assume that Congress, when extending the statute over the Territory, had in mind the judicial construction so placed upon it, and the usual rule, that the construction of statutes follow their adoption in other States, should be applied here.

The learned counsel for appellants states his conclusions of the purposes of the Legislature in the enactment of this law as follows:

(1) To remove the disability of a married woman to contract.

(2) To settle the question of her insurable interest in her husband's life.

(3) To enable the husband to make reasonable provision for his family, in the event of his death; and,

(4) To define such reasonable provision in the way of insurance and fix the limit beyond which he could not go, as against his creditors.

As to all the named purposes counsel is probably correct, except as to the second. If the wife should pay the premiums out of her separate funds we do not think her insurable interest is limited to what $300 would buy, but that the limit applies only where the husband pays the premiums.

At common law the wife could not contract, and a third person could not contract for her benefit without the assent of the husband. This statute is an enabling act, and removes her disabilities insofar as the contract for insurance upon her husband's life is concerned. Felrath v. Schonfield, 76 Ala., 199; 52 Am. Rep., 321. In that case it was also held that when the husband undertakes to procure for her a policy on his life he acts as her self-constituted agent, and inasmuch as she is being benefited as by a gift, her acceptance will be presumed.

Appellants have conceded that another purpose of the statute was to enable the husband to make reasonable provision for his family, in the event of his death, and to define what is such reasonable provision provided he be in such financial condition that his creditors have the right to inquire into such provision, if made by means of insurance. If the husband be not in such independent condition financially as to place him beyond the right of inquiry by creditors as to the disposition of his funds or property, and he himself pays the premiums on the policies, the statute fixes the amount which

he may expend in premiums for insurance at $300. Of course, if he invests more than that in premiums and his estate pays all his debts, nobody suffers, but if he is largely indebted when the investments in insurance are made, and afterwards proves to have been insolvent, having invested more than the statutory amount, then the provisions of the statute must control.

The statute of Alabama is identical in its main features, except in amount allowed for premiums, and the Supreme Court of that State, in Felrath v. Schonfield, said: "A similar statute prevails in the States of Illinois and Missouri, each like our own being copied substantially from the New York statute of 1840." In construing the Alabama statute, the Supreme Court of that State used this language: "The object of the statute is to authorize an insurance on the life of a husband and father for the benefit of his surviving wife and children, freed from the claims of his creditors. To these he owes the duty of maintenance and protection. The statute intended to guard against the perversion of this right or privilege into the means of defrauding his creditors, therefore a limit is fixed beyond which he can not pass in paying premiums for such insurance from his own funds or property, which, in the absence of the statute, would have been appropriated to his creditors. If the limit is exceeded the statute intervenes and devotes the excess of insurance which may be realized to the payment of his debts. It is not important whether more than one policy, or how many policies, may be obtained, if the aggregate of premiums paid on the whole exceeds $500, the rights of the creditors arise. The excess above what $500 of annual premiums obtained is withdrawn from the exemption." Stone v. Knickerbocker Life Ins. Co., 52 Ala., 589.

The Supreme Court of Missouri, in Pullis v. Robison, 73 Mo., 201, 39 Am. Rep., 499, passed upon practically the same statute, and announced as the settled law of that State, that a husband who is solvent has the right to insure his life for the benefit of his wife, "and to pay the annual premiums thereon so long as he remains solvent, and can do so without prejudice to or in fraud of the rights of creditors," and that the interest of the wife in such insurance is not affected by the statute, saying, "We do not think this statute can be so interpreted as to curtail or restrict the right of a solvent husband to apply only $300 of his means annually to the payment of premiums on his life policy, procured for the benefit of his wife. . . . We think it is the purpose of the statute to allow a husband, who might be in an embarrassed, and even in an insolvent condition, to secure to the wife the benefit of an insurance on his life free from the claims of creditors, when the annual premium on such policy does not exceed the sum of $300; in other words, that he might annually withdraw for such purpose that sum without subjecting the amount insured to the payment of creditors." Stokes v. Amerman, 121 N. Y., 337.

Notwithstanding the statute and its conceded purpose to enable the husband to make reasonable provision for his family, and to define what is such reasonable provision, appellant's counsel has frankly admitted that, "An examination of the cases arising under statutes

similar to the one in the Indian Territory will disclose a holding that it is not enough to show that the statutory limit has been exceeded. It must further appear that there is a deficiency of other assets, and possibly, also, that the situation of the debtor and the beneficiary at the time the premiums were paid was such as to make the arrangement unjust, and in determining these issues the court will be guided by the same rules as if the settlement had been in any other kind of property."

Here again there is a conflict among the decisions of the States, one line holding that no matter what the financial condition of the donor at the time of the gift, if necessary to protect creditors the property conveyed could be appropriated, but we think the case of Salmon v. Bennett, 1 Conn., 525; 7 Am. Decisions, 237, announces a correct doctrine. In that case, after holding that in the case of a voluntary conveyance a distinction is made between the children of a grantor and strangers, the court said: "Where there is no actual fraudulent intent, and a voluntary conveyance is made to a child, in consideration of love and affection, if the grantor is in prosperous circumstances, unembarrassed and not considerably indebted, and the gift is a reasonable provision for the child, according to his state and condition in life, comprehending but a small portion of his estate, leaving ample funds unincumbered for the payment of the grantor's debts, then such conveyance will be valid against the claims of creditors existing at the time." The Supreme Court of Arkansas, in Dodd v. McGraw, 8 Ark., 83; 46 Am. Decisions, 306, quotes with approval the above language. Driggs Bank v. Norwood (Ark.), 6 S. W. Rep., 324.

It then becomes material to determine what Love's financial condition was when he took the policies, and when the subsequent premiums were paid thereon. He was a merchant, doing an active business, and had been accumulating property since entering upon that career, some fifteen years before his death. He usually discounted his mercantile bills by drawing on appellant bank. His solvency was never questioned by it, nor by any one so far as this record shows. Yet it seems from the record that his estate is now insolvent, and his surviving wife or some of his creditors must sustain a loss. When did this insolvent condition come into existence? Appellants admit the record shows that "prior to 1901 he usually owed the bank nothing, and at the close of the cotton season had a balance to his credit." Is the present condition of his estate the result of mismanagement thereof since his death, or was he insolvent at any time before he died? If so, when? If Love was solvent at all times prior to his death, appellants do not claim the right to recover herein.

Appellees contend that such was his condition, and they undertake to demonstrate it by tabulated statements of his net worth at stated annual periods for several years before his death. Appellants controvert the correctness of these figures, and by calculations which they make, show him to have been insolvent, during the same years.

When learned counsel reach opposite conclusions, from figures and estimates taken from the same record, a state of case is shown that may well require submission to a jury. It may be that a jury would

find that at the time the policies were issued Love was solvent, but that at one or more periods when premiums were paid on such policies he was not, or was so largely indebted as to be financially embarrassed. Should such be their finding, were the appellants, or either of them, then creditors of Love? Here again opposing counsel have reached opposite conclusions from the same record.

Appellees claim that the bank's debt, evidenced by the note sued upon, has been paid by the deposit of funds made since the death of Love, and that the debt now owing to the bank is one created by overdrafts made after the execution of said notes. Appellants not only controvert this conclusion, but say that because Love was continuously indebted since January, 1901, in such large sums that the estate has proved insolvent, and because the bank has since 1901 continuously been one of his creditors, it has all the rights of a prior creditor, even though the deposits should have been applied to the notes instead of the overdrafts.

Is it a fact that there was no time after January, 1901, when Love was not indebted in some amount to the bank? Whether the present indebtedness to it be a part of the original or a new debt, would not be decisive of the appellants' rights to maintain this action, if at all times since January, 1901, either of appellants has been an existing creditor, and Love has been so largely in debt that he would have proved insolvent in case of being forced to meet his liabilities, and that such continuing indebtedness has merely been shifted from one creditor to another, or from one form of indebtedness to another. Bertrand v. Elder, 23 Ark., 494; Driggs Bank v. Norwood (Ark.), 6 S. W. Rep., 324; Parish v. Murphree, 13 How., 92 L. Ed. 14, 67.

The authorities are also numerous and forceful to the effect that a subsequent creditor may also maintain an action such as this is, provided there have been, at all times, creditors who could have maintained an action.

In the case of Savage v. Murphy, 8 Bosw. (N. Y.), 75, the court enters upon a lengthy historical review of the authorities, and concludes a very able opinion in these words: "Some conclusions of an important character, and bearing particularly upon the case before us, appear to be justly deducible from the history of the law I have stated. The first inquiry is, were there creditors at the time of the conveyance, who could, upon the facts then existing, have succeeded in setting it aside? If so, has the party continued since that time indebted to others, who could have been equally successful, even if the original creditors had been paid off? And so were there successive creditors at every future period to the time the deed is impeached, as to whom it would have been adjudged void? If this is found to be the case, then I apprehend a subsequent creditor (the grounds of impeaching the instrument remaining unchanged) stands upon an equal footing with a prior creditor."

In Paulk v. Cooke, 39 Conn., 566, the court said: "But it is said that the debts which existed at the time that this conveyance was made have since, with one exception, been paid, and that a voluntary conveyance can be impeached only by those who were creditors at the time; not by subsequent creditors. This principle clearly

has no application where there has been a continued unbroken indebtedness. The debts are owed, though they may be due to new creditors. It is a most unsubstantial mode of paying a debt, to contract another of equal amount; it is the merest fallacy to call such an act getting out of debt."

Similar conclusions were reached in Rudy v. Austin (Ark.), 19 S. W. Rep., 113; Spuck v. Logan (Md.), 54 Atl. Rep., 991, which resembles this case in some of its aspects, and particularly in the fact that the creditor therein, like the bank in this case, had been one of the continuing creditors of the debtor for  number  f years. Besides, the record shows that the money Love borrowed from Donoho was paid on the bank's debt at the date of the Donoho note, so that either Donoho or the bank was an existing credito from the date of the bank debt paid in whole or in part with money borrowed of Donoho, and its inception can be traced pon anothe trial.

It is also contended by appellees that appellants are not entitled to recover, because rents were collected by Love from his wife's separate lands and used in the purchase of insurance; and further that by the laws of the Indian Territory an exemption of $500 is allowed, in addition to the $300 permitted to be expended in the payment of premiums for insurance. The total annual premiums being paid when Love died aggregated $1,166.80; so if the exemption be added to the amount permitted by the statute to be expended for insurance, their sum would still fall short of the actual investment by $366.80 annually. Besides, it hardly seems reasonable that the exemption was intended as an annual allowance, but rather that when once selected and used the right is exhausted.

Upon the question of the probable application of rents to the payment of premiums, it seems to us the testimony offered by appellees, at pages 82, 83 of the transcript, showing how the premiums were paid, is conclusive against this contention, in the present state of the testimony. We copy the portion applicable: "Also check on same bank, dated September 5, 1903, payable to John M. Summers, cashier New York Life Insurance Company, or order, $159; policy 425071; also check, dated November 14, 1903, payable to New York Life Insurance Company, for $170.50: policy 636876; also check, November 2, 1903, to New York Life Insurance Company for $300.75; policy 986011; also check, January 6, 1904, to Mutual Life Insurance Company, of New York, $537.60." All these checks were given by Love on appellant bank, and by it paid. They aggregate $1,167.85, and we have not been referred to any testimony tending to show that the rents from the wife's land were applied to the payment for insurance, nor to any agreement that they should be. If the laws of the Territory make rents from the wife's land her separate property that fact can be developed upon another trial, as well as the facts concerning their application to the purchase of insurance, and her interests protected accordingly.

As already stated, should the jury find that Love was at all times free from financial embarrassment, and that the insurance procured was but a reasonable provision for his wife and children, then the appellants are not entitled to recover. On the other hand, should

the jury find that at the time the policies were taken and the first premiums paid such was Love's financial condition, but that before he died he became insolvent or indebted to a degree which produced embarrassment approaching insolvency, and while in that condition he paid premiums on these policies in excess of the amount permitted by the statute quoted, then if these appellants, or either of them, were creditors they can maintain their action. The statute has fixed the amount of insurance that $300 will buy as the insurable interest which the wife and children of a financially embarrassed debtor (who is a citizen of the Indian Territory) have in his life, provided he himself pays the premiums, and makes the excess liable to the payment of his debts. If the jury shall find that Love was not embarrassed when the policies were issued, but afterwards became insolvent, or approached that condition, the amount thus made liable will depend upon his financial condition at the dates when the several premiums were paid.

The Supreme Court of the United States, in New York Life Ins. Co. v. Seyms, 93 U. S. 24, L. Ed., Book 23, 791, announced the rule that a contract of insurance is not an insurance for a single year with the privilege of renewal, but that it is an entire contract for life, subject to a forfeiture for a failure to pay any stipulated premium. In discussing the question the court said: "As before suggested, the annual premiums are not the consideration of assurance for the year in which they are severally paid, for they are equal in amount; whereas, the risk in the early years of life is less than in the later. It is common knowledge that the annual premiums are increased with the age of the person applying for insurance."

In Pullis v. Robison, 73 Mo., 201, 39 Am. Rep., 497, the opposing rules announced by the different courts, concerning the application of the proceeds of insurance, have been stated, and the court announces the following conclusion: "The object of such rules being to do exact justice between the contending parties, and to distribute the funds according to their rights, it appears to us that neither of the above rules accomplishes the object, and inasmuch as the insurance money in contest in this case was the product of all the premiums paid, we think a just distribution of it would be obtained by declaring that Mrs. Robison should be decreed to have so much of the funds as was produced by the payment of the premiums by her husband when solvent, and the plaintiffs so much as the premiums paid by Robison when insolvent contributed to produce; that is, that plaintiffs are entitled to recover the same proportional part of the insurance money that the premiums paid by Robison when insolvent bear to the premiums paid by him when solvent." The same conclusion was reached upon the same statute in a much later case by the Missouri Supreme Court, Judson v. Walker, 55 S. W. Rep., 1083.

We think these cases announce a just rule, provided the sum recoverable by appellants, if any, on account of premiums paid by Love while insolvent be diminished by the amount which $300 would have purchased at the date of its investment, and provided there is nothing in the policies themselves to vary the rule. In other words, if Love was at all times solvent and not financially embarrassed, the

statute does not limit his right of investment; if at all times insolvent or embarrassed he could invest annually $300 in premiums and the amount which that sum would buy would be the extent of the exemption in favor of his widow and children. If insolvent at the time of payments of some only of the premiums, then the sum recoverable should be diminished by the amount which $300 annually paid would have purchased for the year or years of such investments while insolvent or embarrassed, unless a different construction be necessary by reason of the terms and conditions of the policies, none of which is contained in the record, and we are not intending to state an invariable rule.

What then must have been Love's financial condition at the dates, either of the issuance of the policies or when the subsequent premiums were paid, to entitle appellants or his other creditors to recover? We may answer in the language of the Court of Appeals of Virginia, in a well considered case: "A state of indebtedness which produces embarrassment and which approaches to insolvency; a state of indebtedness, which, if any calamitous accident should happen to the property, or any fall in the price of it should take place, would probably leave the donor without the means of paying his creditors." Wilson v. Buchanan, 3 Grat., 334.

And also in the language of a well known text writer, to the effect, "that the debtor must have been in such condition financially, and must have acted in the way that a prudent and just man would have done, with proper regard to his condition and circumstances, and due consideration of all future events which prudence and integrity could foresee."

But we do not think the widow's right to dower should be taken into consideration in determining Love's financial condition at any particular date. While "it is appointed to all men once to die," financial prudence and integrity will neither cause nor prevent the occurrence. The law only requires that one shall not hazard his financial condition upon a venture which prudence and integrity would condemn, and that he be not insolvent or financially embarrassed when the investments assailed were made.

We are of opinion that the burden is upon those claiming the gift, to show a financial condition of the donor which warranted the making of it.

If the appellants shall be found entitled to recover, it will not be proper to tax them with the attorneys' fees incurred by the insurance company, but such fees should be allowed and follow the fund. Hatch v. Hatch, 80 S. W. Rep., 411. If they fail to recover, then the insurance company should recover of them its attorneys' fees. Nixon v. Malone, 98 S. W. Rep., 385.

It will, therefore, be necessary for the learned trial court to submit to the jury, as questions of fact:

1. What was Love's financial condition when he purchased the policies in question?

2. What was his condition at the dates of payment of the subsequent premiums for insurance? If not embarrassed at any of these dates, and he had ample property to satisfy all of his creditors, that

will end the controversy; but if financially embarrassed at either time, then,

3.  Were appellants creditors at all on any of these several dates?

4.  If they were creditors only when some of the subsequent premiums were paid, then at what dates was he insolvent or embarrassed to the degree indicated?  And what ratio does the amount paid for premiums, while in this embarrassed condition, bear to the whole sum expended for insurance while not embarrassed?

Upon the determination of these facts, together with such others as may be developed upon the trial, let the rights of the parties be adjudicated.

For the errors of the court in withdrawing the case from the jury and in awarding to the insurance company attorneys' fees against appellants, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

### ON REHEARING.

Appellees' motion for rehearing is overruled.

In consideration of appellants' motion for a rehearing, our former opinion is modified to this extent:  We do not think the widow's right to dower should be taken into consideration in determining Love's financial condition at any particular date under the facts now disclosed by the record.  We do not decide that there might not be conditions of ill health or imminence of death or other possible facts, with reference to the donor, at the time of the gift, under which such right to dower could not properly be considered by the jury.

With this modification appellants' motion for rehearing is also overruled.

*Overruled.*