CARLTON et al. v. TEXAS BANKING & INVESTMENT CO.

(Court of Civil Appeals of Texas. El Paso. Dec. 19, 1912. Rehearing Denied Jan. 15, 1913.)

1. TRIAL (§ 139*)—QUESTIONS FOR JURY—DIRECTED VERDICT.

Where the evidence is such that fair-minded men could rightfully reach but one conclusion, it is proper for the court to direct a verdict.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

2. BANKS AND BANKING (§ 131*)—DEPOSITS—DUTY OF BANK.

A depositor, though holding money in a fiduciary capacity, can draw it out of the bank at any time, the bank being bound to honor his checks, and incurring no liability as long as it does not participate in any misappropriation of funds, consequently, where a broker deposited funds of his various clients in his general account and drew checks thereon, a client cannot complain that the bank honored checks drawn against funds which were obtained from the sale of his property, and so deprived him of the proceeds.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 316–318; Dec. Dig. § 131.*]

3. PRINCIPAL AND AGENT (§ 73*)—RIGHTS OF PRINCIPAL—SUBAGENT.

An inferior agent is accountable only to his immediate employer, and, when employed without the knowledge or consent of the principal, there is no privity of contract between the principal and subagent, consequently, where a commission house employed to sell plaintiff's property entered into an agreement with the bank that it should deposit the proceeds and that the bank would honor checks in plaintiff's favor, plaintiff cannot recover on that agreement, not being a party thereto.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 151; Dec. Dig. § 73.*]

4. BANKS AND BANKING (§ 143*)—DEPOSITS—LIABILITY OF BANKER.

Where a commission house by check appropriated all of the funds deposited in the bank, neither it nor its sureties can recover against the bank upon an agreement that, if the commission house would deposit those funds, it would honor checks to its patrons; all of the funds deposited having been appropriated, and the commission house and its sureties being primarily liable.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 414, 517; Dec. Dig. § 143.*]

Error from District Court, Harris County; A. R. Hamblen, Judge.

Action by L. B. Carlton against the Texas Banking & Investment Company and the Farmers' Union Commission & Grain Company and others. There was a judgment for plaintiff against the Grain Company, the last defendants, and in favor of the Banking Company, and plaintiff and the Grain Company bring error. Affirmed.

G. W. Tharp and Chas. A. Warnken, both of Houston, for plaintiffs in error. Guynes & Colgin and T. H. Stone, all of Houston, for defendant in error.

HARPER, C. J. Plaintiff, L. B. Carlton, brought this suit on June 1, 1908, in district court of Harris county against the Farmers' Union Commission & Grain Company, a corporation, and its bondsmen, as commission merchants, and against the Texas Banking & Investment Company, a copartnership composed of W. W. Wilson and George W. Carroll, alleging that he made a contract with the Farmers' Union Commission & Grain Company, whereby he was to store flour with it, and it was to sell same for him on commission; that Farmers' Union Commission & Grain Company did its banking with the said Texas Banking & Investment Company; that said Farmers' Union Commission & Grain Company informed said Banking Company that it would not place money belonging to Carlton in its bank if the same might be applied to overdrafts which the Commission Company had with the Banking Company, and that, if placed there, all checks given to Carlton must be honored; that said Banking Company agreed that the money for Carlton's flour should be deposited with it, and that it would honor the Grain Company's checks to Carlton for the same,

and, in compliance therewith, the Grain Company deposited the funds derived from sales of Carlton's flour in said bank, and gave its checks to Carlton therefor; that on April 10, 1908, the Grain Company gave Carlton a check for $361.02, which was presented April 15th, and payment refused by the bank; that on April 20, 1908, and before plaintiff learned said check was not honored, another check for $414 was given him by the Grain Company and payment refused.

The defendant Banking Company pleaded no privity of contract between Carlton and the bank, general denial, "and denial of alleged agreement. Farmers' Union Commission & Grain Company were doing banking business with them. All deposits made in name of Commission Company, and no funds deposited as money of plaintiff or as agent for plaintiff, but same was always deposited as general funds and in the course regular banking deposits are made. No notice ever brought to them that any of said funds belonged to plaintiff or others; made agreement with Farmers' Union Commission & Grain Company not to apply deposits to indebtedness of $1,500 secured by note, provided Commission Company showed signs of progression; did not agree to honor all drafts regardless of Commission Company having funds to meet same, or to pay checks to plaintiff. Bank paid all checks presented as long as there were funds to credit of Commission Company. Only amounts applied to note of $1,500 were amounts realized from sale of collateral securities deposited to secure said note long before alleged agreement with plaintiff. All sums deposited by Commission Company were paid out in checks drawn by them on the bank in regular course of banking business. All deposits made were subject to checks of Commission Company, and bank could not prevent drawing funds out. No application of funds to overdraft, and, if any credit was given Commission Company, same was on strength of deposits." The Farmers' Union Commission & Grain Company and its bondsmen filed answers, and pleaded its agreement with Carlton and agreement with said bank, substantially as pleaded by plaintiff, that it complied with its agreement, both with Carlton and the bank, that it had deposited Carlton's money with said bank and drew checks in his favor, which were not paid, and prayed that plaintiff take nothing, but, if judgment be rendered against them, that they have judgment over against the Texas Banking Company. Case tried before jury, court instructed verdict for plaintiff Carlton against Farmers' Union Commission & Grain Company and its bondsmen, and in favor of Texas Banking & Investment Company, W. W. Wilson, and George W. Carroll. Now before this court on writ of error.

Two assignments of error are urged in the plaintiff's brief: First, because of peremptory charge of court; and, second, failure to grant motion for new trial. Same question in both assignments, because a substantial issue in the case, made by the pleadings and evidence, was whether or not the money collected from the sale of Carlton's flour was deposited with the Texas Banking & Investment Company under an agreement between the said Texas Banking & Investment Company and Farmers' Union Commission & Grain Company, whereby the Texas Banking & Investment Company agreed to honor checks drawn by Farmers' Union Commission & Grain Company in favor of Carlton for the proceeds of sale.

[1] In Red River National Bank v. De Berry, 47 Tex. Civ. App. 96, 105 S. W. 998, it is said: "The rule authorizing the court to direct a verdict is that, when fair-minded men could rightfully reach but one conclusion from the evidence, the instruction is permissible, but, when there is an issue raised by the evidence upon which such men could reasonably differ, it is the province of the jury to pass upon it, and the court cannot take the right from them."

[2, 3] The question is, Is there any evidence in this case upon which plaintiffs, or either of them, could, under the law, recover as against the Texas Banking & Investment Company? The question here is not whether the agreement pleaded by plaintiffs, and testified to by Morris, agent of the Commission Company, was made; but the question is, admitting that it was so made: Can plaintiffs recover under the said agreement in the light of the subsequent action and conduct of the parties, under the undisputed facts in the case?

The whole of the testimony of plaintiffs upon the question of agreement is as follows:

R. L. Morris testified: "In February, 1908, I was manager of the Farmers' Union Commission & Grain Company, buying and selling grain, as commission merchants. In my capacity as manager I entered into a verbal contract with Carlton (plaintiff) to handle flour and grain for him at a commission of ten cents per barrel for all flour we sold, and the same way with oats, chops, and corn, grain, and I was to pay him for any goods sold at any time he called for it. I afterward had a conversation with Mr. Wilson of the Texas Banking & Investment Company, in which I told him of my said contract with Carlton, and I then told Mr. Wilson, 'I'm going to make this contract with Carlton, providing you won't throw down any of my checks.' Wilson said, 'I will take care of your checks, make your deposits along as you have been, regular banking, as usual; I will protect your checks.' When I told Mr. Wilson about the contract, he said it was a good one, go ahead and make it. I then did business with Mr. Carlton. He put his goods in there and I sold them, and I collected money for them and put it in the Texas Banking & Investment Company every day. The checks upon which suit is brought, the

ones the bank refused to pay, I gave to Mr. Carlton, and they represent proceeds of sale of goods for Carlton. I never stated anything to Mr. Carlton with reference to the arrangement I had made with Wilson at any time. The money I received from day to day in the general conduct of the business I deposited in the name of Farmers' Union Commission & Grain Company. I made no distinction when I made the deposits, and when I checked against the deposit I checked against the general account indiscriminately, regardless of whether it was A. or B.'s money after the arrangement with Mr. Carlton. I did not notify the cashier, Scarborough, that there was any special deposit. I made daily deposits of sales of business, including Carlton's stuff. I did not make special deposit to cover those two checks. Mr. Evans, president, may have drawn out all the money deposited, and I gave checks to various other people on the money which I deposited, whether it was Carlton's money or not."

L. B. Carlton, plaintiff, testified: "The checks were given to me for flour, grain, and stuff sold by the Farmers' Union Commission & Grain Company, and I received other checks besides these two prior to these. I never talked with Mr. Wilson, nor the Texas Banking & Investment Company, on the subject of any arrangement to protect me, because all the checks given me were paid. They had given me a number of them, always paid me in checks."

The principles governing this case are clearly stated in the opinion of the Chief Justice in the case of Coleman v. Bank, 94 Tex. 607, 63 S. W. 867, 86 Am. St. Rep. 871, and authorities there cited. From these authorities it is clear that a depositor, although holding money in a fiduciary capacity, may draw it out of the bank ad libitum. The bank is bound to honor his checks, and incurs no liability in so doing, as long as it does not participate in any misappropriation of funds or breach of trust. The mere payment of the money to, or upon the checks of, the depositor, does not constitute a participation in an actual or intended misappropriation by the fiduciary, although his conduct or course of dealing may bring to the notice of the bank circumstances which would enable it to know that he is violating his trust. Such circumstances do not impose upon the bank the duty, or give it the right, to institute an inquiry into the conduct of its customer in order to protect those for whom it may hold the fund, but between whom and the bank there is no privity. National Bank v. Claxton, 97 Tex. 576, 80 S. W. 604, 65 L. R. A. 820, 104 Am. St. Rep. 885; Morse on Banks and Banking, 317, and cases there cited. It is also an admitted general rule that an inferior agent is only accountable to his immediate employer, and

not to the principal, and it is upon this principle that where the agent employs a subagent, without the knowledge or consent of his principal, express or implied, there exists no privity between the principal and the subagent. Story on Agency, 217, 386, 387, 388, 201; Bank v. Jones, 18 Tex. 820. Applying these principles of law to the facts in this case, Carlton could not recover against the bank, because he did not know of any agreement between his factor and the bank for his protection. No money was ever deposited in the bank as the funds of Carlton, but all deposits were placed in the name of the Commission & Grain Company, whether received from sales of Carlton's stuff or any other, so there was never at any time any privity of contract between the bank and Carlton. In fact, the proper construction of the agreement pleaded and testified to by Morris made between him and Wilson, of the bank, is that the bank would protect Morris as against the checks of the other persons conducting the business of the Commission & Grain Company, and not that the bank would protect Carlton.

But from the view we take of the law applicable to the case it would make no difference whether Wilson's agreement was to protect Carlton, because in the light of subsequent actions of agents of the Commission & Grain Company—that is, the depositing of all money in the one account, and drawing it out indiscriminately—the bank was not required to institute inquiry into their conduct to see if they were selling goods of Carlton's and at all times paying for them.

[4] And since the undisputed evidence shows that the Commission & Grain Company had drawn out the money and appropriated it to its own use, and in this action trying to recover judgment against the banking company for the very money which it has already so appropriated, and being primarily liable to Carlton, neither the Commission & Grain Company nor its bondsmen should be permitted to recover against the bank.

Believing that it was not error for the court to instruct a verdict, it is ordered that the judgment be, and the same is hereby, affirmed.