MRS. R. J. COLEMAN v. FIRST NATIONAL BANK OF WAXAHACHIE.

No. 1005. Decided June 27, 1901.

**1. Wife's Separate Property—Bank Deposit—Checks by Husband.**

When a husband has deposited his wife's money in bank in her own name with the understanding that he will draw it out by checks, the bank is authorized to pay it upon checks so drawn by him. (Pp. 606-608.)

**2. Same—Husband's Management of Wife's Money.**

The husband being entitled to the sole management of the wife's separate property (Revised Statutes, article 2967), has the right to keep her money, and hence to deposit it in bank and draw it out; and the bank, as in the case of deposit by a trustee, should presume that his check is drawn in the proper discharge of his trust, and is not charged with the duty of seeing that the money was being drawn out for the wife's use from the fact that the husband was of intemperate or improvident habits. (Pp. 606-608.)

ERROR from the Court of Civil Appeals for the Fifth District, in an appeal from Ellis County.

Mrs. Coleman sued the bank, and, having appealed from a judgment for defendant, on its affirmance obtained writ of error.

*Seay & Seay,* for plaintiff in error.

*Templeton & Harding,* for defendant in error.

No briefs have reached the Reporter.

GAINES, CHIEF JUSTICE.—This suit was brought by the plaintiff in error, a widow, to recover of defendant in error certain moneys deposited in its bank by her husband during his lifetime which belonged to her own separate right. The defense was that the money was deposited with it by the husband in the name of his wife with instructions that he was to draw it out upon checks signed in her name by him, and that he had so drawn it out. To the answer of the defendant, the plaintiff replied in substance that her husband was a man of utterly dissolute habits in regard to money and unsafe to be trusted therewith, and that the bank knew the facts, and that if it allowed the money to be checked out, it was guilty of gross negligence.

There was a verdict and judgment for the defendant, which judgment was affirmed upon appeal.

The following conclusions of fact were found by the Court of Civil Appeals:

"In July, 1889, J. W. Coleman, the husband of the appellant, deposited with defendant bank the sum of $4076.35, and thereafter other amounts aggregating in all $5165.17. Said money was the separate property of and deposited in the name of Mrs. R. J. Coleman. At the time it was deposited, J. W. Coleman stated to the cashier that he would deposit the money in the bank in his wife's name, but it was to be understood that it would be checked out by him. It was known to the cashier of the bank that the money so deposited was the separate estate of Mrs. R. J. Coleman. Between the time of the making of said deposits and up to the time of the death of J. W. Coleman in September, 1893, he drew checks against said deposits on said bank, said checks being signed R. J. Coleman, by J. W. Coleman, in various sums of money, which checks were presented to the bank and paid in the usual course of business, amounting in the aggregate to the entire amount of said deposits. J. W. Coleman was a drinking man and at times gambled. When drinking, he was reckless in the use of money. The officers of the bank knew that he was a drinking man but did not know that he gambled or that he was reckless in the use of money."

The question is, when a husband has deposited his wife's money in bank in her own name with the understanding that he will draw it out by checks, is the bank authorized to pay upon checks so drawn? and we think the question should be answered in the affirmative. We have found but little authority upon the immediate question, and are of opinion that since it is a matter in this State of statutory regulation, decisions from other States would be of but little value. As to the title of property acquired during marriage by the efforts of the husband or wife or by the joint efforts of both, our laws are probably more liberal towards the wife than those of any other State except the few in which the community system exists. But as to the husband's control over her separate estate, they are less liberal than the laws of several of the other States. In some she may carry on business under her own name and on her own account, and in some the husband has no control over her separate estate, except such as may be conferred by her upon him. In this State, the statute, speaking with reference to the wife's separate property, declares that "during the marriage the husband shall have the sole management of all such property." Rev. Stats., art. 2967. The provision is more important in this State, since under our laws the income of the separate property of either spouse becomes the common property of the husband and wife. "The sole management" of the wife's separate estate does not imply that the husband has the power to sell her tangible property or even choses in action, and it has been held that this he can not do. Kempner v. Comer, 73 Texas, 200. But it does imply that he may put it to its appropriate use so that it may produce an income. As to her money, the powers of management give him the right to its possession, to keep it safely, and hence to deposit it in bank and to draw it out. Such being the authority of the husband

under the law,—he being the statutory agent for the management of her separate property and funds,—he would have at least as much power over money deposited in bank even in her name as any other trustee would have over a like deposit of trust funds, and the bank would be under the same liability to pay out the money upon his checks. The principle applicable to bank deposits by trustees is thus stated by Mr. Justice Matthews in the case of the National Bank v. Insurance Company, 104 United States, 63 : "A bank account, it is true, even when it is a trust fund, and designated as such by being kept in the name of the depositor as trustee, differs from other trust funds which are permanently invested in the name of trustees for the sake of being held as such; for a bank account is made to be checked against and represents a series of current transactions. The contract between the bank and the depositor is that the former will pay according to the checks of the latter, and when drawn in proper form the bank is bound to presume that the trustee is in the course of law fully performing his duty, and to honor them accordingly." This language was quoted with approval and the principle applied in the case of the State National Bank v. Reilly, 124 Illinois, 464. Again in Freeholders of Essex v. National Bank, 48 New Jersey Equity, 53, the court say: "The contract, arising by implication of law, from a deposit of money in a bank is, that the bank will, whenever required, pay out the money in such sums and to such person as the depositor shall designate by his checks. The deposit is made to subserve the convenience of the depositor, with the understanding that he shall have the right to draw checks against it at his pleasure. And even when it is known that the money deposited is held by the depositor as a trustee, the bank is bound to presume, in the absence of knowledge to the contrary, that a check drawn against the money by the depositor has been drawn by him in the proper discharge of his duty as trustee, and to pay the check accordingly." Citing National Bank v. Insurance Company, supra. In a similar case the Supreme Court of Georgia says: "When money is deposited in a bank, it is immaterial, so far as the bank is concerned, in what capacity the depositor holds or owns it. The obligation of the bank is simply to keep it safely and return it to the proper person. Therefore, when a trustee deposits money in a bank to his credit as agent, the bank would be discharged by paying back to the individual who made the deposit, and, in the absence of knowledge or notice to the contrary, would have the right to assume that he would appropriate the money to its proper uses and trusts. If this individual should go in person to the bank and demand the money, it can not be doubted that the latter could and ought to hand it to him. * * * It appearing from what has already been said that the person who actually puts money in bank is entitled to have it back upon demand, and that it is immaterial how he describes himself, there can be no doubt that a check drawn by such person as agent and presented by the payee is a sufficient demand for the amount of money called for by the check, especially when the money was credited to the depositor as agent. If payment of such

check be refused, the depositor may bring suit, and, as already shown, the suit may be maintained by him described as trustee." Munnerlyn v. Bank, 88 Ga., 333. The principle is that since the trustee has control of the money and has deposited it in the bank to be drawn out upon his checks, he has the right to draw for it, and the bank is not permitted to deny that right. When the beneficiary asserts his claim and gives the bank notice, the rule does not apply. In the New Jersey case just cited, the general rule was followed even as to the custodian of public funds.

The principle does not allow the bank to collude with the depositor in a misapplication of the trust fund; nor does it permit the bank to apply the fund to the individual debt due to it from the trustee. Bank v. Jones, 18 Texas, 811. If such be the rule as to ordinary agents and trustees, it certainly is the rule in this State as to the husband with respect to the wife's separate funds, of which, under our law, he has the "sole management." If the money had been deposited by the wife before her marriage and the fund had remained in custody of the bank after that event, it would seem that he, as sole manager of her separate estate, and he alone, would have had the right to withdraw it. Clearly, therefore, having himself made the deposit with the understanding that it was to be drawn out upon his checks, the bank was bound to honor the checks so drawn. It was not charged with the duty of inquiring into the purpose for which each check was given. The fact that the husband was improvident in the use of money did not, under the law, detract from his authority as manager of his wife's separate estate, nor did it impose upon the bank an additional duty to guard her interest. The plaintiff, by entering into the marriage relation with her husband, made him the sole agent for the management of her separate estate, and the rule announced by Judge Lipscomb in Kesler v. Zimmerschitte, 1 Texas, 50, "that he who trusts most, where one of two innocent persons is to suffer, shall lose most," applies; and the defendant did not have to see that the money was being drawn out for her use before it paid his checks.

The opinion of the Court of Civil Appeals upon the first appeal of this case, as reported in 17 Texas Civil Appeals, 523, very clearly and ably presents the views expressed in this opinion. The cause was then remanded to be tried in accordance with the rulings made in that opinion. Upon the second trial of the case, the rulings of the Court of Civil Appeals were followed.

We find no error in the proceedings which calls for a reversal of the judgment, and therefore the judgment and that of the Court of Civil Appeals are affirmed.

*Affirmed.*