UNITED STATES FIDELITY & GUARANTY CO. v. ADOUE & LOBIT.

(Supreme Court of Texas.    June 23, 1911.)

1. JUDGMENT (§ 660*)—REVIEW—SUBSEQUENT APPEALS—FORMER POSSESSION AS LAW OF THE CASE.

A judgment even if its correctness be questioned, should, in a subsequent suit involving the same fund, be held to be conclusive and binding.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1171; Dec. Dig. § 660.*]

2. BANKS AND BANKING (§ 130*)—DEPOSIT OF TRUST FUNDS — MISAPPROPRIATION — PARTICIPATION BY BANK.

Where a bank, with knowledge of the trust character of funds deposited with it, permits a diversion thereof and aids in the appropriation of the fund to the trustee's personal debt, it is liable to the beneficiary.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 319–327; Dec. Dig. § 130.*]

On motion for rehearing.    Motion overruled.

For former opinion, see 137 S. W. 648.

RAMSEY, J.    In the motion for rehearing filed in this case, the correctness of the judgment rendered by us is vigorously assailed for all the reasons urged on original submission.

1. The principal question of liability, on the ground that the funds for which defendants in error were held were trust funds, and that they were visited as a matter of law with notice thereof, and with such notice appropriated part of the fund to the payment of their personal debt, and as to the remaining $5,000 permitted and assisted in a diversion of same, is thoroughly discussed in the original opinion, and it seems unnecessary to go into that matter again, even if time permitted. However, this much may be said. In the case of Moore v. Hanscom, 101 Tex. 293, 106 S. W. 876, it was held by this court that the effect of the transactions herein involved was to constitute the fund evidenced by the certificate of deposit the money of the ward's estate, and on this conclusion judgment was in that case rendered against the plaintiff in error here for the full amount thereof.

[1] That judgment, even if we doubted its correctness, should in a suit involving the same fund be held to be conclusive and binding upon us in this case. However, we do not doubt its correctness, but rather it seems to us to be clearly right. That defendant in error was visited as a matter of law with notice of the trust character and nature of the fund we have no sort of doubt. That, we think, is demonstrated by the authorities cited and reasons given in the original opinion, and we do not care to go into that question further than to refer to and incorporate herein the following quotation from the opinion of this court in the well-considered case of National Bank v. Claxton, 97 Tex. 569, 80 S. W. 604, 65 L. R. A. 820, 104 Am. St. Rep. 885, where Justice Williams, speaking for the court, says:

"The principles governing are clearly stated in the opinion of the Chief Justice in the case of Coleman v. Bank, 94 Tex. 607, 608 [63 S. W. 867, 86 Am. St. Rep. 871], with copious citations from leading authorities. From these authorities it is clear that a depositor, although holding money in a fiduciary capacity, may draw it out of the bank ad libitum. The bank is bound to honor the checks and incurs no liability in so doing as long as it does not participate in any misapplication of funds or breach of trust. The mere payment of the money to, or upon the checks of, the depositor does not constitute a participation in an actual or intended misappropriation by the fiduciary, although his conduct or course of dealing may bring to the notice of the bank circumstances which would enable it to know that he is violating his trust. Such circumstances do not impose upon the bank the duty or give it the right to institute an inquiry into the conduct of its customer in order to protect those for

───

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

whom it may hold the fund, but between whom and the bank there is no privity. This is clearly brought out in the leading case of Gray v. Johnson, L. R. 3 Eng. & Ir. App. Cas. 1, in which an executrix, by a check signed by her, as such, in favor of a mercantile firm of which she was a member, drew out of a bank a fund belonging to the estate. In the opinion of Lord Chancellor Cairns the law is thus stated: 'On the one hand, it would be a most serious matter if bankers were to be allowed, on light and trifling grounds—on grounds of mere suspicion or curiosity—to refuse to honor a check drawn by their customer, even although that customer might happen to be an administrator or an executor. On the other hand, it would be equally of serious moment if bankers were to be allowed to shelter themselves under that title, and to say that they were at liberty to become parties or privies to a breach of trust committed with regard to trust property, and, looking to their position as bankers merely, to insist that they were entitled to pay away money which constituted a part of trust property at a time when they knew it was going to be misapplied, and for the purpose of its being so misapplied. I think, fortunately, your Lordships will find that the law on that point is clearly laid down, and may be derived without any hesitation from the authorities which have been cited in the argument at your Lordships' bar, and I apprehend that you will agree with me when I say that the result of those authorities is clearly this: In order to hold a banker justified in refusing to pay a demand of his customer, the customer being an executor and drawing a check as an executor, there must, in the first place, be some misapplication, some breach of trust, intended by the executor, and there must in the second place, as was said by Sir John Leach in the well-known case of Keane v. Roberts (1) be proof that the bankers are privy to the intent to make this misapplication of the trust funds. And to that I think I may safely add that, if it be shown that any personal benefit to the bankers themselves is designed or stipulated for, that circumstance, above all others, will most readily establish the fact that the bankers are in privity with the breach of trust which is about to be committed.' In the only other opinion, by Lord Westbury, this statement of principle occurs: 'The relation between banker and customer is somewhat peculiar, and it is most important that the rules which regulate it should be well known and carefully observed. A banker is bound to honor an order of his customer with respect to the money belonging to that customer which is in the hands of the banker; and it is impossible for the banker to set up a jus tertii against the order of the customer, or to refuse to honor his draft on any other ground than some sufficient one resulting from an act of the customer himself. Supposing, therefore, that the banker becomes incidentally aware that the customer, being in a fiduciary or a representative capacity, meditates a breach of trust and draws a check for that purpose, the banker, not being interested in the transaction, has no right to refuse the payment of the check, for if he did so he would be making himself a party to an inquiry as between his customer and third persons. He would be setting up a supposed jus tertii as a reason why he should not perform his own distinct obligation to his customer. But then it has been very well settled that, if an executor or a trustee who is indebted to a banker, or to another person having the legal custody of the assets of a trust estate, applies a portion of them in the payment of his own debt to the individual having that custody, the individual receiving the debt has at once not only abundant proof of the breach of trust, but participates in it for his own personal benefit.' The law is stated to the same effect in Morse on Banks and Banking, and he cites many cases the opinions in which sustain him. Section 317, and cases cited."

2. But it is urged that, in any event, as to the $5,000 paid out to Compton's brother, which had been by Adoue & Lobit transferred to Compton's personal credit and account, no recovery should be had.

[2] We think it might well be held that, in view of the defendants' appropriation of the larger part of the trust fund to payment of their personal debt that this vice should give color and character to their treatment of the whole fund. However this may be, it is well settled in the authorities, and is in accordance with sound legal reason, that when, with knowledge of the trust character of the funds, the bank permits a diversion thereof and aids in the appropriation of same to the trustee's personal debt, that it is, and of right should be, held liable. This is clearly held in Duckett v. National Mechanics' Bank, 86 Md. 400, 38 Atl. 983, 39 L. R. A. 84, 63 Am. St. Rep. 513, where the court say: "And if loss ensued by reason of Clagett drawing the fund out by checks on his personal account, the bank is liable." And again in that case the court say: "Its act in placing distinctly marked trust funds to the *personal* credit of Clagett was *obviously* wrongful, and it must bear the resulting consequences."

3. Again we are urged to set aside the judgment, in so far as judgment is here rendered against defendants in error, and remand the case for further proceedings. It would be utterly illogical to do so. If we are correct in our view of the law, under the facts, taken most favorable to defendants in error, they are liable. Let the motion be overruled.