*888 On Rehearing.
PROVOSTY, J.
The cashier of the defendant bank having testified that the defendant bank received no benefit from the $100 check, or, in other words, that it was merely a check by which Perkins, the depositor, drew out $100 for his own use, we have concluded upon further consideration of the matter that the defendant is not responsible to the state for this $100. This testimony of the cashier has to be accepted for true in the absence of contradiction. If the reliability of this evidence had been doubted on the trial, the door was open to the state to have the books of the defendant bank examined by an expert. The suggestion now made in the brief filed in behalf of the state that the books of the bank were the best evidence should have been made on the trial. It is too late to make it now. The check was drawn some time before suspicion had arisen of the defalcation of Perkins; hence, even if the money had been withdrawn with a view to defraud, the defendant bank could not possibly be charged with any participation in the fraud. Perkins at that time had large balances in this and other banks; as a matter of fact, it is entirely improbable that he •drew out this small amount with any view to defraud.
Upon these facts, no legal responsibility to the state rests upon the defendant bank for this $100 as clearly appears from the following excerpts stating the legal principles by which this point is governed:
In Central National Bank v. Conn. Mutual L. Ins. Co., 104 U. S. 54, 26 L. Ed. 693, the court said:
“A bank account, it is true, even when it is a trust fund, and designated as such by being kept in the name of a depositor as trustee, differs from, other trust funds which are permanently invested in the name of the trustee for the sake of being held as such. For a bank account is made to be checked against, and represents a series of current transactions. The contract between the bank and the depositor is that the former will pay according to checks of the latter, and, when drawn in proper form, the bank is bound to presume that the trustee is in the course of the lawful performance of his duty, and to honor them accordingly.”
In State v. Jahraus, 117 La. 292, 41 South. 577, 116 Am. St. Rep. 208, this court said:
“A. is the agent of B. C. knows that he is agent, and that A. keeps an account to the credit of B. A. as agent hands his check to O., who accepts it and collects the amount. That is the end of the matter, if O. knows nothing of the purpose for which A. has drawn the check. He may assume that it was in connection with his agency, and that is the end of the matter.”
In Bank v. Claxton, 97 Tex. 576, 80 S. W. 606, 65 L. R. A. 825, 104 Am. St. Rep. 885, the court said:
“The principles governing are clearly stated in the opinion of the chief justice in the case of Coleman v. First Nat. Bank, 94 Tex. 607, 608, 63 S. W. 867, 86 Am. St. Rep. 871, with copious citations from leading authorities. From these authorities it is clear that a depositor, although holding the money in a fiduciary capacity, may draw it out of the bank ad libitum. The bank is bound to honor his checks, and incurs no liability in so doing, as long as it does not participate in any misapplication of funds or breach of trust. The mere payment of the money to or upon the checks of the depositor does not constitute a participation in an actual or intended misappropriation by the fiduciary, although his conduct or course of dealing may bring to the notice of the bank circumstances which would enable it to know that it is violating his trust. Such circumstances do not impose upon the bank the duty, or give it the right, to institute an inquiry into the conduct of its customer, in order to protect those for whom the customer may hold the fund, but between whom and the bank there is no privity.”
And, again, in same ease:
“In order to hold a banker justified in refusing to pay a demand of his customer, the customer being an executor, and drawing a check as an executor, there must in the first place be some misapplication — some breach of trust— intended by the executor, and there must, in the second place, as was said by Sir John Leech in the well-known case of Keane v. Roberts (4 Madd. 357, 20 Revised Rep. 306), be proof that the bankers are privy to the intent to make this misapplication of the trust funds. * * * The relation between banker and customer is somewhat peculiar, and it is most important that the rules which regulate it should be well known and carefully observed. A banker is bound to honor an order of his customer with *890 respect to the money belonging to that customer which is in the hands of the banker; and it is impossible for the banker to set up a jus tertii against the order of the customer, or to refuse to honor his draft, on any other ground than some sufficient one resulting from an act of the customer himself. Supposing, therefore, that the banker becomes incidentally aware that the customer being in a fiduciary or a representative capacity meditates a breach of trust, and draws a check for that purpose, the banker, not being interested in the transaction, has no right to refuse the payment of the check, for, if he did so, he would be making himself a party to an inquiry as between his . customer and third persons. He would be setting up a supposed jus tertii as a .reason why he should not perform his own distinct obligation to his customer.”
In Lowndes v. City Nat. Bank, 82 Conn. 19, 22 L. R. A. (N. S.) 408, 72 Atl. 154, the court said:
“This is not to say that a bank undertakes to supervise and safeguard a trust account therein, or comes under the duty of looking after the appropriation of such funds when withdrawn. Such is not the law [citing authorities], Neither is it to say that a bank is not entitled, at least in the absence of knowledge to the contrary, to presume that a depositor who presents a check in proper form is anting in the course of a lawful exercise of his rights, or that suspicion on its part that an improper use of the proceeds of a check regularly drawn and presented was intended to be made by the drawer of it would justify a refusal to honor it, or that the existence of such suspicion or reasonable grounds therefor would cast upon a bank a duty to investigate as to the correctness of that suspicion. The authorities are to the contrary.” (Citations.)
Zane on Banks and Banking, p. 218, says:
“In the case of trust funds the bank, assumes no responsibility unless in some way it is put on notice of a violation of the trust. By accepting an account in the name of a trustee it does not undertake any supervision of the trust.”
The decree of this court heretofore handed down in this case is therefore amended so as to read, as follows: It is ordered, adjudged, and decreed that the verdict and judgment appealed from be annulled,, avoided, and reversed, and that there now be judgment for plaintiff, and against defendant, in the sum of $2,076.77, with interest from judicial demand and costs in both courts, and that as thus amended said decree be reinstated and affirmed.