## WHEELER MOTOR SALES CO. v. GUERGUIN et al. (No. 8185.)

Court of Civil Appeals of Texas. San Antonio. April 3, 1929.

Rehearing Denied April 24, 1929.

Newton & Newton and Bergstrom & Sehorn, all of San Antonio, for appellant.

Newton & Woods and Spencer, Rogers & Lewis, all of San Antonio, for appellees.

FLY, C. J. This is a suit brought by Margaret Jeane Guerguin against the Wheeler Motor Sales Company, appellant, to secure the appointment of a receiver, or in the alternative for an injunction and for a judgment for $1,067, as evidenced by certain promissory notes. Appellant denied liability on two of the notes, one for $350 on which there was an unpaid balance of $300, and another for $767 on which there was an unpaid balance of $267, and as to the third note for $500 admitted its execution and impleaded the City National Bank of San Antonio, which said note had been given to evidence money borrowed from Mrs. Guerguin, and for which she had given her check for $500, and which had been deposited by the president of appellant company in said bank, and had been checked out of said bank by said company's president for his personal use, and that no part of it was ever paid to appellant. The cause was tried by the court without a jury, and judgment rendered in favor of appellee for $970.84, and that appellant take nothing as to the City National Bank.

There is no statement of facts, and the findings of fact of the trial judge necessarily become the conclusions of fact of this court. They show that prior to July, 1926, the Cleveland Motor Sales Company was engaged in the purchase and sale of new and secondhand automobiles, and that F. W. Wheeler had the controlling interest and was general manager of the association. That after the time named, in July, 1926, the Wheeler Motor Sales Company was organized as a corporation and took over all the business and assets of the Cleveland Motor Sales Company, and T. W. Wheeler became the owner of most of the shares and was president and general manager of the corporation. The note showing a balance of $350 was the individual liability of T. W. Wheeler, for which appellant was not liable. On December 22, 1926, appellee Guerguin loaned the Wheeler Motor Company $767, for which it gave a promissory note. Afterwards $500 was paid on the note, leaving a balance of $267 due on the principal,

which at the time of trial amounted, with interest and attorney's fees, to $338.73. On January 11, 1927, Mrs. Guerguin loaned to appellant the sum of $500, and T. W. Wheeler executed a note for that sum for the Wheeler Motor Sales Company, and at time of trial that note with interest and attorney's fees amounted to $632.11. At the time this suit was brought appellant corporation was having its affairs liquidated, E. S. Gilbert being the liquidating agent, and appellee Guerguin made an agreement with him by which he was to deposit $1,250 in the City National Bank of San Antonio "for the purpose of guaranteeing the payment of any dividend which the plaintiff would become entitled to on her claim which she might establish against the said Wheeler Motor Sales Company." It was provided in the agreement "that the sum of $1,250.00 will be deposited in the City National Bank to await the result of any judgment that may be rendered herein, provided such judgment shall establish the amount of the plaintiff's claim only and leave it for settlement in accordance with her rights as a general creditor in the liquidation of the business of the defendant company, unless she obtain a judgment as a preferred creditor, and it is further agreed that upon the deposit of the said money as herein provided for no hearing of the plaintiff's application for receiver or injunction shall be had herein." The $1,250 was deposited, and no hearing was had for a receivership or injunction. The court ignored the agreement and awarded an execution to appellee Guerguin to collect the debt for which judgment was rendered.

■■ This suit was instituted to establish a claim against the Wheeler Motor Sales Company in favor of Margaret Jeane Guerguin, and any agreement made by and between E. S. Gilbert, who was attempting to liquidate claims against appellant that were in process of liquidation and Guerguin, appellee, had no pertinency to the establishment of the claim against appellant. When the claim was established it became the duty of the trial court to render judgment for the amount and award execution as in any other case. The agreement was foreign to and had no connection with the judgment, and if appellee Guerguin had agreed to collect her judgment in a certain way, that became a question between her and appellant when she sought the collection of her claim. She had the right to a regular judgment, and that judgment carried with it a regular execution to collect the judgment. Without naming it the power to issue an execution was inherent in the judgment, and without it the judgment was utterly ineffective. As said in Freeman on Judgments, § 3: "The law provides the means of enforcing judgments. No court has authority to assume legislative powers by providing other means." There was no agreement that the judgment should be rendered

for a certain sum or that it should be collected in a certain way, but, on the other hand, the agreement contemplated the rendition of a judgment unhampered by any agreement. There was no intimation in the agreement that the court would be expected to render other than the ordinary judgment in like cases, and it had no bearing or influence whatever in determining the judgment of the court. The issues in the case did not comprehend the 'method of collection, but merely the amount that appellant owed to appellee. The agreement was foreign to the issues, and the liquidator, who made the agreement with appellee Guerguin, was not a party to the suit and had no right to demand an enforcement of his contract. It had nothing to do with the establishment of the debt and the court properly ignored it. If the contract is enforceable as to the method of collecting the debt, it should be enforced when the time is reached for collection of the debt. We withhold any opinion as to its enforceability but feel sure that it had no place in this suit. The first and second propositions are overruled.

■ The last loan to appellant of $500, made by Margaret Jeane Guerguin, was obtained by T. W. Wheeler, president and general manager of appellant, and he executed a note for $500 to her for the corporation, as president. Appellee Guerguin drew a check for $500 on the City National Bank, payable to the order of the Wheeler Motor Sales Company, and Wheeler indorsed the check, "Wheeler Motor Sales Company, by T. W. Wheeler, President, and T. W. Wheeler," and the amount of the check was credited to the individual account of T. W. Wheeler, who checked it out and used it for his own personal use and benefit. He had not been authorized by the corporation to use the money for his personal benefit. However, he owned a controlling interest in the corporation and had the power and authority, as president and general manager to borrow money on the credit of the corporation, to execute notes therefor, and pledge automobiles and other property as security. The check when brought to the bank for deposit was indorsed by the payee and presumably was the private property of T. W. Wheeler. It was indorsed in blank and was in the possession of Wheeler, who indorsed it in his private capacity. It was not incumbent on the bank to make an investigation as to whether Wheeler was the lawful owner of the check. There was nothing to arouse suspicion, and banks are not required to send out detectives to ascertain the rights and powers of those who deposit checks. No trust relations were created between the bank and the corporation. The money was deposited by the president of the corporation, who had absolute control of the financial affairs of the corporation, and the bank had no grounds of suspicion that the president was misappropriating funds of the

corporation. Business is based on confidence, and suspicion, if indulged to excess and without circumstances to justify it, would undermine the affairs of commercial transactions. A reasonable faith in men is the basis of civilized government, and when distrust and suspicion fill the hearts of men ruin and disaster are sure to follow. There were no circumstances surrounding the deposit of the $500 check, indorsed by the corporation to its president, to arouse any distrust, and certainly not enough to cause the bank to assume the role of a detective and conduct an investigation of the corporation and its officers. There is no finding in the findings of fact that justifies the statement in the brief of appellant "that the president of the Wheeler Motor Sales Company misappropriated the check for $500 with full knowledge of the defendant City National Bank." On the other hand, the check was indorsed to T. W. Wheeler and presumably was his property. In the case of Interstate National Bank v. Claxton, 97 Tex. 569, 80 S. W. 604, 65 L. R. A. 820, 104 Am. St. Rep. 885, the Supreme Court approved the following from the English case of Gray v. Johnson, L. R. 3 Eng. & Ir. App. Cas. 1: "A banker is bound to honor an order of his customer with respect to the money belonging to that customer which is in the hands of the banker; and it is impossible for the banker to set up a jus tertii against the order of the customer, or to refuse to honor his draft on any other ground than some sufficient one resulting from an act of the customer himself. Supposing, therefore, that the banker becomes incidentally aware that the customer, being in a fiduciary or a representative capacity meditates a breach of trust and draws a cheque for that purpose, the banker, not being interested in the transaction, has no right to refuse the payment of the cheque, for if he did so he would be making himself a party to an inquiry as between his customer and third persons. He would be setting up a supposed jus tertii as a reason why he should not perform his own distinct obligation to his customer." The excerpt from the English decision has been quoted and approved in Morse on Banks and Banking, § 317, and has many cases to support the ruling. In the Texas case cited the court held: "From these authorities it is clear that a depositor, although holding money in a fiduciary capacity, may draw it out of the bank ad libitum. The bank is bound to honor his checks and incurs no liability in so doing as long as it does not participate in any misapplication of funds or breach of trust. The mere payment of the money to, or upon the checks of, the depositor does not constitute a participation in an actual or intended misappropriation by the fiduciary, although his conduct or course of dealing may bring to the notice of the bank circumstances which would enable it to know that he is violating his trust. Such circumstances do not impose upon the bank the duty or give it the right to institute an inquiry into the conduct of its customer in order to protect those for whom it may hold the fund, but between whom and the bank there is no privity."

The case of Silisbee State Bank v. French Market Grocery Co., 103 Tex. 629, 132 S. W. 465, 34 L. R. A. (N. S.) 1207, approved the Bank v. Claxton Case, and held: "It is beyond question that a bank receiving a deposit, made as this one was, becomes bound and therefore entitled, to treat the depositor as owner of the fund and to honor and pay his checks properly drawn, without concerning itself with any question as to the ultimate ownership, or as to the application made or to be made of the money drawn out." The cases of Coleman v. First Nat. Bank, 94 Tex. 605, 63 S. W. 867, 86 Am. St. Rep. 871, and Grayburg Oil Co. v. Neville (Tex. Civ. App.) 300 S. W. 360, are fully in line with all Texas authorities and sustain the judgment of the trial court.

In the case of U. S. Fidelity & Guar. Co. v. Adoue & Lobit, 104 Tex. 379, 137 S. W. 648, 138 S. W. 383, 37 L. R. A. (N. S.) 409, Ann. Cas. 1914B, 667, the bank was charged with knowledge that the deposit was a trust fund and the bank received a part of it at least in payment of a debt to it, and the rest was paid to another creditor. The court held that the bank had notice of the misappropriation of the fund.

The judgment will be affirmed.