## PIERCE PETROLEUM CORPORATION v. GUARANTY BOND STATE BANK OF MT. PLEASANT. (No. 3722.)

Court of Civil Appeals of Texas. Texarkana.
Nov. 21, 1929.

Cantey, Hanger & McMahon, F. T. Denny, and Alfred McKnight, all of Fort Worth, and T. C. Hutchings, of Mt. Pleasant, for appellant.

J. A. Ward, of Mt. Pleasant, for appellee.

HODGES, J. The appellant is a foreign corporation, and has a permit to do business in the state of Texas. Some time prior to January 1, 1926, it established an agency at Mt. Pleasant, in Titus county, Tex., for the purpose of selling petroleum products, such as gasoline, oil, and similar articles. During the year 1925 and part of 1926 G. H. Reidout was the representative in charge of that agency. Reidout was authorized to sell appellant's goods for cash and on time. He was required to report his sales and make remittances periodically to the appellant's Dallas office. He received as compensation for his services a commission on the sales made. He was instructed, when making collections by check, payable to the appellant, to indorse those checks for exchange only. He was fur-

nished a rubber stamp with the following words: "For Exchange Only to the Order of the Pierce Petroleum Corporation. ———, Agent." It was his duty to apply the proceeds of such checks to the purchase of exchange payable to the order of the appellant, and immediately forward the same to its Dallas office. He had no authority to indorse checks payable to the appellant for any other purpose, or to open an account for the appellant with any bank at Mt. Pleasant or elsewhere.

In May, 1926, the books and accounts of Reidout showing his dealings with the appellant and its customers were examined by one of the appellant's auditors; and it was found that Reidout owed the appellant the sum of $4,095.88 which had not been accounted for.

The evidence showed that, when Reidout took charge of appellant's agency at Mt. Pleasant, he opened an account in his own name with the Guaranty Bond State Bank, the appellee in this case. During that time he was permitted by the bank to deposit to his personal credit in that account certain checks which had been received by him as collections for the sale of petroleum products, and which were made payable to the appellant. After the discovery of the shortage, Reidout was discharged, and a demand was made upon the bank by the appellant for the payment of the amount of its funds which had been placed to the credit of Reidout during the months of March, April, and May, 1926. Upon the refusal of the bank to comply with that demand, the appellant filed this suit, against the bank alone, alleging a conversion of its funds. In its amended original petition the appellant listed the following checks, which it claimed had been wrongfully deposited by the bank to the personal credit of Reidout:

of Reidout with full notice of appellant's interest in such funds. The prayer was for judgment for the sum of $2,887.32, the value of the checks converted, and interest thereon, aggregating $3,500. The bank answered, in substance, that full restitution had been made of all the funds belonging to the appellant which had been wrongfully deposited to the personal credit of Reidout during the term of his agency. The bank specially pleaded that it had issued and delivered to Reidout cashiers' checks, and exchange payable to the appellant, in different sums, aggregating $6,815.74, an amount largely in excess of the value of the checks which it is charged with having converted.

There was practically no conflict in the evidence, and, when the introduction of testimony was concluded, the court gave a peremptory instruction in favor of the bank, as defendant.

The appellant contends in this appeal that the state of the evidence was such that the court not only should have refused the instruction given, but should have peremptorily directed a verdict in its favor.

■ The proof showed that the fourteen checks listed by the appellant in its amended original petition were, upon their face, payable to the appellant, and had been received by Reidout as collections from customers who had purchased appellant's goods; that Reidout presented those checks to the bank indorsed "Pierce Petroleum Corporation by R. Reidout, Agent," and that the bank then placed the amount of those checks to his personal credit on its books. It is conceded that in thus giving Reidout a personal credit for the amount of the checks, which the bank knew belonged to the appellant, appellee bank was guilty of a misapplication of funds, and thereby became liable to the appellant for the amount so misapplied. It therefore be-

| Date | Payor | Payee | Amt. |
| --- | --- | --- | --- |
| March 6, 1926 | Jefferson Service Sta. | Pierce Pet. Corp. | $252.44 |
| March 19, 1926 | Jefferson Service Sta. | Pierce Pet. Corp. | 219.76 |
| March 20, 1926 | Jefferson Service Sta. | Pierce Pet. Corp. | 61.17 |
| April 2, 1926 | Jefferson Service Sta. | Pierce Pet. Corp. | 222.00 |
| April 13, 1926 | Jefferson Service Sta. | Pierce Pet. Corp. | 394.16 |
| April 23, 1926 | Jefferson Service Sta. | Pierce Pet. Corp. | 294.10 |
| May 3, 1926 | Jefferson Service Sta. | Pierce Pet. Corp. | 142.58 |
| May 14, 1926 | Jefferson Service Sta. | Pierce Pet. Corp. | 227.31 |
| May 19, 1926 | Jefferson Service Sta. | Pierce Pet. Corp. | 18.82 |
| May 19, 1926 | Jefferson Service Sta. | Pierce Pet. Corp. | 107.60 |
| May 20, 1926 | Jefferson Service Sta. | Pierce Pet. Corp. | 100.00 |
| April 17, 1926 | Driggers Brothers | Pierce Pet. Corp. | 132.20 |
| April 10, 1926 | W. A. Ford | Pierce Oil Corp. | 303.39 |
| May 10, 1926 | W. A. Ford | Pierce Oil Co. | 411.80 |
| Total | | | $2,887.32 |

This was followed by a general averment that during the months of March, April, and May, 1926, Reidout collected for appellant large sums of money in cash and in checks payable to the appellant, which had been deposited by the bank to the personal credit

comes unnecessary to discuss the authorities cited by the appellant on that proposition. The question before us is, does the proof relied on conclusively show that the bank thereafter made restitution? Upon that issue the burden of proof rested on the bank.

It is undisputed that during the period beginning March 1, 1926, and ending May 19 following, Reidout made the following remittances to the appellant:

| | | |
|---|---|---:|
| March | 1, 1926 | $1,305 24 |
| March | 11, 1926 | 379 01 |
| March | 19, 1926 | 1,008 99 |
| April | 2, 1926 | 1,147 29 |
| April | 13, 1926 | 764 07 |
| April | 22, 1926 | 78 95 |
| April | 28, 1926 | 605 78 |
| May | 3, 1926 | 598 87 |
| May | 11, 1926 | 129 31 |
| May | 14, 1926 | 300 58 |
| May | 19, 1926 | 497 65 |
| | Total | $6,815 74 |

The remittances were in the form of drafts payable to the appellant, drawn by the Guaranty Bond State Bank on banks at Dallas. Those drafts were delivered to Reidout, and by him sent to appellant's Dallas office and there received. The proof also shows that in payment for those drafts Reidout drew his personal checks for amounts aggregating $4,764.58 against his account with the appellee bank. It thus appears that during the months of March, April, and May, 1926, Reidout withdrew and paid over to the appellant, from his personal account, more money than it is claimed was wrongfully deposited to the credit of that account. Whether or not that fact was sufficient to exonerate the bank from its liability incurred by improperly crediting appellant's funds to that account depends on the connection between the deposits and remittances.

 When the bank, upon the unauthorized indorsement of Reidout, deposited to his credit checks which upon their face were payable to the appellant, the bank not only became liable for the conversion of those checks, but also assumed the status of a trustee holding those funds in trust for the true owner. In prosecuting this suit it devolved upon the appellant to trace its funds into that account. After that was done, it then devolved upon the bank to trace those trust funds into the hands of the appellant, through the medium of those drafts. If it appeared that all of the funds deposited to the credit of Reidout, except those here sued for, belonged to him individually, or that all of the money and checks that went into that account had been withdrawn and paid over to the appellant, the situation would be materially different. But the evidence was, we think, sufficient to support a finding, had the issue been submitted to a jury, that the greater part of the cash and checks credited to Reidout's personal account were collections made by him as appellant's agent. It also appears that Reidout drew a number of checks against that account that cannot be accounted for. Presumably all or most of those were drawn for his own personal use. Lilienstern, the president of the appellee bank, testified:

"Before he started handling the Pierce Petroleum Corporation's money through his account on February 23, 1926, his account was practically dormant; he had 50 cents in there, and it had been there since July, 1925. In other words, when he began the placing on deposit of the Pierce Petroleum Corporation's money in that account he only had 50 cents in his account. At the end of the period, or when the account was closed, his account was 15 cents. He had 35 cents less than he started out with."

About the 1st of March Reidout borrowed from the bank $300, a part of which was used in purchasing a draft for remittance to his principal. That borrowed money is all of the private funds of Reidout that were definitely traced into that account. The character and number of deposits made by Reidout during the three months his account was so active, and the large amounts checked out to pay for remittances to his principal, clearly indicated that a very large portion of the deposits he was making during that time were from collections for his principal. It is not likely that he would have drawn so frequently and so heavily on his private funds for the purpose of remitting what belonged to his principal. The appellant having traced an indefinite amount of its funds into the account of Reidout, the burden was then shifted to the bank to show how much of that fund belonged to Reidout individually. Waddell v. Waddell, 36 Utah, 435, 104 P. 743; 39 Cyc. 532, and cases there referred to.

 But the mere fact that the bank officials knew that Reidout was depositing money and checks which belonged to his principal did not make the bank liable to the principal for those deposits, or require the bank to see that the funds thus deposited were delivered to the principal. The bank owed that duty only as to those checks which were payable to the appellant and which it had cashed or credited to the account of Reidout upon an unauthorized indorsement. Interstate Nat. Bank v. Claxton, 97 Tex. 569, 80 S. W. 604, 606, 65 L. R. A. 820, 104 Am. St. Rep. 885; Nat. Bank v. Insurance Co., 104 U. S. 68, 26 L. Ed. 693; Continental Nat. Bank v. Weems, 69 Tex. 498, 6 S. W. 802, 5 Am. St. Rep. 85; Waddell v. Waddell, 36 Utah, 435, 104 P. 743. In the first case above referred to the court said:

"The principles governing are clearly stated in the opinion of the Chief Justice in the case of Coleman v. Bank, 94 Tex. 607, 608, 63 S. W. 867, 86 Am. St. Rep. 871, with copious citations from leading authorities. From these authorities it is clear that a depositor, although holding the money in a fiduciary capacity, may draw it out of the bank ad libitum. The bank is bound to honor his checks, and incurs no liability in so doing, as long as it does not participate in any misapplication of funds or breach of trust. The mere payment of the money to, or upon the checks of, the depositor, does not constitute a participa-

tion in an 'actual or intended misappropriation by the fiduciary, although his conduct or course of dealing may bring to the notice of the bank circumstances which would enable it to know that he is violating his trust. Such circumstances do not impose upon the bank the duty or give.it the right to institute an inquiry into the conduct of its customer, in order to protect those for whom the customer may hold the fund, but between whom and the bank there is no privity."

After referring to and discussing an English case, the court continued:

"In the only other opinion, by Lord Westbury, this statement of the principle occurs: 'The relation between banker and customer is somewhat peculiar, and it is most important that the rules which regulate it should be well known and carefully observed. A banker is bound to honor an order of his customer with respect to the money belonging to that customer which is in the hands of the banker; and it is impossible for the banker to set up a jus tertii against the order of the customer, or to refuse to honor his draft, on any other ground than some sufficient one resulting from an act of the customer himself. Supposing, therefore, that the banker becomes incidentally aware that the customer, being in a fiduciary or a representative capacity, meditates a breach of trust, and draws a check for that purpose; the banker, not being interested in the transaction, has no right to refuse the payment of the check, for, if he did so, he would be making himself a party to an inquiry as between his customer and third persons. He would be setting up a supposed jus tertii as a reason why he should not perform his own distinct obligation to his customer. But then it has been very well settled that if an executor or a trustee who is indebted to a banker, or to another person, having the legal custody of the assets of a trust estate, applies a portion of them in the payment of his own debt to the individual having that custody, the individual receiving the debt has at once not only abundant proof of the breach of trust, but participates in it for his own personal benefit.' The law is stated to the same effect in Morse on Banks & Banking, and he cites many cases the opinions in which sustain him. Section 317 and cases cited."

■ There is in this case no evidence that the bank ever appropriated any part of appellant's funds to the payment of Reidout's personal indebtedness to the bank. In the absence of evidence, we cannot assume that any of the checks, except those listed in the appellant's petition, were upon their face payable to the appellant. Hence its liability as a tort-feasor, or trustee, is limited to these funds represented by the checks which the proof shows were payable to the appellant and which cannot be traced into the remittances made by Reidout to the appellant. To correctly determine that question requires a detailed inquiry into the evidence relating to the deposits and remittances. Since practically all of the funds credited to the account of Reidout belonged to his principal, it cannot be presumed that a remittance of an amount equal to the value of a misapplied check, made at any time thereafter, was a remittance of the trust fund represented by that check. Reidout owed his principal much more than he ever paid.

■ Without going into the details of the evidence concerning each deposit and each remittance, and Reidout's daily bank balances, all of which must be considered, we think it sufficient to say that the evidence warranted a finding that the bank has not fully discharged its liability to the appellant for the funds converted. For instance, one check of $100 was credited to Reidout after the last remittance had been sent. The record shows that a check for $132.20, dated April 17, was presented by Reidout, and only $100 was credited to his account; the remainder, $32.20, was paid to him in cash. On March 6 a check for $252.44, the first described in appellant's petition, was credited to the account. No remittance was made until March 11. Between those two dates Reidout's bank balance was reduced to $125.75 by checks drawn and not accounted for. It follows that not more than that amount of the trust fund was on hand and could have entered into the draft for a larger amount which was remitted on March 11. Two of the checks sued for were indorsed for exchange only, as required by Reidout's instructions from appellant. But the evidence does not make it entirely clear that those checks were applied to the purchase of exchange. The dates and amounts of other remittances will support the inference that they included the trust funds previously deposited. However, there are other deposits and remittances which leave room for doubt. One check for $100 was deposited on May 20, and there is no evidence of any remittance after that date. We have concluded that the state of the evidence did not warrant the peremptory instruction given. The cases to which appellee refers were decided on facts in some material respects different from those here presented.

■ In the trial below the appellant proved that in remitting money collected Reidout accompanied each cashier's check, or exchange, with what is called a "remittance advice," showing the source from which the amount remitted had been received. Each of those sheets contained the name of each credit customer from whom the collection reported had been made, together with amount collected, and also the amount of cash sales included in the remittance. The total of those sums was given at the bottom of each sheet. What appears to be the last of those sheets sent in to the Dallas office showed collections of $4,095.88 unaccompanied by any remittance. When those sheets were offered in

evidence, the court admitted only that portion of each which showed the total collection and the amount remitted. These did not differ from the remittances shown by the bank. Appellant assigns as error the refusal of the court to also admit that portion of each remittance advice which showed the names of the customers from whom the collections reported had been made, and also what amount of the remittance was from cash sales.

The bill of exceptions reserved by the appellant does not state what the grounds of the objection to the introduction of this evidence were. It merely recites that the defendant *objected*, and states that portion of the objection which was sustained. We cannot assume that the objector did not state any grounds for his objection, in the absence of a statement to that effect in the bill. If he did state his grounds, they should have been incorporated in the bills of exception. A statement to that effect is necessary to enable an appellate court to determine whether or not the objection was tenable. In the absence of such a statement, assignments based upon the exclusion of proffered evidence will not usually be considered. I. & G. N. Ry. Co. v. Jones (Tex. Civ. App.) 60 S. W. 978; Progressive Lumber Co. v. Marshall & E. T. Ry. Co., 106 Tex. 12, 155 S. W. 175; Walker v. T. & N. O. Ry. Co., 51 Tex. Civ. App. 391, 112 S. W. 430; San Antonio Traction Co. v. Lambkin (Tex. Civ. App.) 99 S. W. 574; First National Bank v. Powell (Tex. Civ. App.) 149 S. W. 1096. However, we have examined the remittance advices offered, and have reached the conclusion that they might have been properly excluded. Since the case is to be reversed upon other grounds, more need not be said concerning the admissibility of those sheets.

For the reasons stated, the judgment is reversed, and the case remanded.