### WHITE et al. v. FIRST NAT. BANK OF STANTON.

No. 3632.

Court of Civil Appeals of Texas. El Paso.

Jan. 6, 1938.

Rehearing Denied Jan. 27, 1938.

Carl Runge, of Mason, and Sam McCollum, of Brady, for appellants.

John B. Littler and Sullivan & Sullivan, all of Big Spring, for appellee.

WALTHALL, Justice.

Appellants, G. R. White, J. E. White, and C. T. White, the surviving members of the former partnership of White & Tom, as plaintiffs, brought this suit against appellee, the First National Bank of Stanton, Tex., and alleged that for many years past the partnership of White & Tom carried a bank account with the appellee bank, and that during the month of January, 1935, the surviving members of the partnership had on deposit with the said bank to their credit the sum of $4,309.01; that on or about February 2, 1935, said bank appropriated and converted to its own use the sum of $4,158.-20 of said deposit, for which they sue, and for interest thereon and costs.

Appellee answered by general denial and by special answer, denied having any knowledge that the managing partner, G. W. Tom, was misappropriating any of said moneys borrowed on partnership notes in the name of the partnership; that the money, proceeds of the notes, was placed to the individual credit of G. W. Tom by his request; that the notes were long past due; that G. R. White, after the death of Tom, acknowledged said debts and paid or caused some to be paid, but refused to pay the balance; that the money sued for was applied by appellee to the discharge of the indebtedness of appellants to appellee.

The record shows:

About the year 1921 the partnership of White & Tom opened a bank account with the appellee bank and which account was continued until February 2, 1935. G. W. Tom, one of the members of the partnership, also carried a personal account with the appellee bank during the same period of time, and until his death on February 4, 1934. The principal source of credits for the partnership account of White & Tom was by means of drafts drawn by G. W. Tom on G. R. White, of Brady, Tex., through the Commercial National Bank of Brady, totaling $796,107.57; rent from farms operated by the partnership, and cotton from said farms, contributed $42,434.75; proceeds from the sale of live stock on the White & Tom ranch amounted to $7,125.62; proceeds from the sale of feed and salt amounted to the sum of $1,463.07; no income from any other source.

On May 16, 1931, G. W. Tom borrowed $2,000 from the appellee bank and therefor executed to the bank a partnership note signed White & Tom, by G. W. Tom, and at Tom's request credited his personal account with the proceeds of the note. The note bears the following indorsements: July 14, 1934, paid $200 to apply on interest; February 2, 1935, paid $541.67 balance of interest to date; February 2, 1935, paid $1,-537.43 to apply on principal. On February 4, 1936, $744.50, standing in the name of Ellison Tom, but belonging to the partnership, was by the bank charged against said account, and of that amount, $508.82 was credited to the balance due on the note.

· The case was tried with a jury, and at the conclusion of the evidence the court instructed the jury to return a verdict in favor of appellants for $508.82.

Appellants, as the surviving members of the partnership, appeal.

### Opinion.

Appellants submit that the court should have rendered judgment in their favor for $2,907.92 and interest, instead of $508.82.

Appellants insist that the appellee bank, having credited the individual account of G. W. Tom with $2,000, the proceeds of the money borrowed on the note, which the bank knew belonged to the partnership of White & Tom, the bank was liable to the partnership of White & Tom for the total amount of withdrawals therefrom, less such amounts as the bank could show were used for partnership purposes, and that the bank was not entitled thereafter to charge the partnership account of White & Tom with necessary funds to satisfy the note the bank had accepted from Tom individually, the proceeds of which the bank had credited to the personal account of Tom, unless it could show that the withdrawals from Tom's personal account were for the benefit of the partnership. As sustaining their contention

appellants refer to Wichita Royalty Co. v. City National Bank of Wichita Falls, 127 Tex. 158, 89 S.W.2d 394, 93 S.W.2d 143; United States F. & G. Co. v. Adoue & Lobit, 104 Tex. 379, 137 S.W. 648, 138 S.W. 383, 37 L.R.A.,N.S., 409, Ann.Cas.1914B, 667.

· We understand from the record that the reason for entering judgment for appellants for $508.82 was that, at the time of the entry of that amount as a credit on the note, the note was then barred by the statute of limitation.

We have reviewed the two cases above referred to, and while they are similar in some of the facts to the case at bar, they are very dissimilar in some of the essential facts, and to the extent, we think, that because of such difference in their facts, different principles of law should be applied in arriving at a proper disposition of the case.

Mr. Jim Tom, cashier of the appellee bank, a witness for appellants, testified in substance as follows: G. W. Tom, to the time of his death, had carried an account in his own name with the appellee bank for some thirteen years; the partnership of White & Tom carried an account with the appellee bank since 1921 and up to the time of G. W. Tom's death; about February 2, 1935, witness, as cashier of the appellee bank, of his own accord, charged the account of White & Tom with the sum of $4,158.20; witness then credited that amount due on the two White & Tom notes; the next year appellants started putting the rents from the partnership farm in Ellison Tom's name; when they got a little rent money we (appellee) finished taking up the notes of $744 and some cents; witness did not consult any of the partners before doing so; G. W. Tom was then dead; G. R. White wrote witness that he had so disposed of the money without his knowledge and consent; his attorney later came and demanded a return of the money, and witness refused, and has never given it back, and is not willing to do so at this time.

The notes were produced in evidence and the payments on the notes explained; Ellison Tom made some of the payments, and apparently some credits were made from money witness had charged to the account of White & Tom. Ellison Tom deposited in the bank some of the partnership money used in making the credits on the notes, and made checks on the deposits in the name of White & Tom, and the renters on the partnership farms made deposits in the name of White & Tom.

It was agreed that the drafts G. W. Tom drew on G. R. White during the years of the partnership amounted to over $793,000, and that the proceeds from the partnership business were deposited in the appellee bank; the two notes shown in evidence, signed White & Tom, by Tom, were deposited to the account of G. W. Tom at his request; the notes were renewed; the note for $2,350, signed White & Tom, by Tom, consists of two items, one for $350 and one for $2,000, the proceeds at Tom's request placed to his individual account were credited to the account of White & Tom.

In answer to a question to the witness, the cashier of the appellee bank, asked by counsel for appellants, in effect, whether the witness knew what G. W. Tom did with the money on the White & Tom notes, placed to his individual credit, the witness answered, no, he might be able to tell and might not, did not believe he could. It was then stated by counsel for appellants that it was agreed that at various times, beginning as far back as 1922, G. W. Tom executed notes other than the notes in question here, signed White & Tom, the notes made payable to the appellee bank, and the proceeds of the notes placed to the individual credit of G. W. Tom, and to which statement the question was asked the witness: "That is right?" To which the witness Jim Tom answered: "I think so."

Jim Tom, called as a witness for appellants, was the only witness who testified in the case. There was no controverting evidence from any source.

The evidence does not show what G. W. Tom, the managing partner of the partnership of White & Tom, did with the proceeds of the White & Tom notes placed to his individual credit at his request by the appellee bank. There is nothing in the evidence tending to show that the partnership did not receive the full use and benefit of the partnership funds placed to the individual credit of G. W. Tom.

When the appellee bank accepted the notes from Tom, Tom was entitled to then receive the money called for by the notes, in the absence of any instruction from the partnership that the proceeds of notes should be placed to the account of White & Tom; and the fact that Tom requested that money be placed to his account, could not of itself, and alone, be information to the bank that Tom intended to or did, or would misapply the money, if he ever had such intent or did so misapply it.

The cases referred to by appellants held, in principle, as we understand it, that the appellee bank could not, on acceptance of the notes from Tom, refuse to pay him the money therein called for, and that the appellee bank would not be required to see that the money was not misappropriated by him, where the accrediting of the money to Tom, and its misappropriation, if any there was, was not contemporaneous or parts of one and the same act. However that may be, we think the case of Quanah, A. & P. Ry. Co. v. Wichita State Bank & Trust Co., 127 Tex. 407, 93 S.W.2d 701, 705, 106 A. L.R. 821, by the Supreme Court, the opinion by Judge Critz, and superseding the opinion in the same case in Tex.Sup., 89 S.W.2d 385, states the law to be applied to the facts of this case. The statement of the case is lengthy and we refer to the case for a statement of the facts and circumstances incident thereto. The court, in the opinion, referred to the case of United States Fidelity & Guaranty Co. v. Adoue & Lobit, supra, and to the case of Wichita Royalty Co. v. City National Bank of Wichita Falls, supra, and we refer to the statement in the opinion as to why the court said the decision in the cases did not decide that case. For the same reason, the facts being different, the law applied to the facts of the two cases is not applicable to the facts of this case.

In the case of Quanah, A. & P. Ry. Co. v. Wichita State Bank & Trust Co., and applicable to the facts of that case, the court said:

"If a person negotiates to a bank a bill of exchange payable on its face to the person negotiating it in a trust capacity, and the purchasing bank, in the very transaction by which it acquires the instrument, passes its proceeds to the individual checking credit of the trustee on its books, and thereafter allows him to check out such proceeds on his individual checks and as a result of such transactions the fund is lost to the true owner, is the bank liable for such loss to such true owner? This question involves a case where the bank received no part of the funds, and had no actual knowledge that the funds were being checked to persons not entitled to receive them. Also, a case is involved where the bank made no inquiry."

The court answered the above question as follows: "In our opinion, the above question should be answered in the negative."

The court then gives the reasons for so holding, citing many authorities as so holding, to which we refer without citing them here. In the case Judge Cureton also wrote a concurring opinion.

The appellee bank evidently acted in good faith in crediting the proceeds of notes to the individual credit of G. W. Tom. There is nothing in the record to show to what account G. W. Tom applied the proceeds of the notes. It seems from the evidence that it was the custom of G. W. Tom, the managing partner of White & Tom, from the beginning of the partnership in 1921 or 1922, to have the proceeds of notes of the partnership executed by him placed to his individual account.

We conclude from the record before us that the appellee bank is not liable, and that the case should be affirmed, and it is so ordered.